MONCURE, P.,
delivered the opinion of the court.
Mrs. Mary J. Roy, late of the county of Essex, in this state, died without issue, leaving a will, which bears date on the 7th day of August, and was admitted to probate in the County court of said county on the 19th day of September 1870; and, on the latter day, the executors named in the will duly qualified as such in the same court. The 5th clause of the will is in these words: “5th. I give the proceeds arising from the sale of my carriage horses, mules, wagon, carts, and all my bonds now due me, to the Baptist Theological Seminary in South Carolina. ” The will contains several specific devises and bequests, but no residuary clause.
In February, 1871, certain persons, claiming to be heirs at law, and distributees and next of kin of Mrs. Roy, filed their bill in the Circuit court of said county against the said executors, in which they charge that there is no institution in South Carolina by the name of “The Baptist Theological Seminary in South Carolina,” and that the bequest in the 5th clause of the said will is invalid: 1st, because it is too uncertain and indefinite as to the beneficiaries thereof; and, 2ndly, because if sufficiently certain and definite as to the beneficiaries, then it is clearly a bequest for the use and benefit of a theological seminary, which they are advised the laws of this commonwealth will not permit, but, on the contrary, prohibit and forbid. They further charge, that at the time of the death of the said testatrix she had .considerable sums of money due her by judgments, as well as by bonds, and they insist *that if the said 5th clause of the will be valid, then the said “Baptist Theological Seminary in South Carolina” can only take such of the debts due the said testatrix as are evidenced by bonds, and not such as are due by judgments; and that as to the said judgment debts, under any view the said testatrix died intestate, and the complainants are entitled to them. They therefore pray for a discovery, and suitable accounts and relief.
The executors filed their answer, to which the plaintiffs replied generally. The defendants in their answer,- among other things not necessary to be stated, say that they are advised that the said bequest is not invalid, either because it is indefinite, or because of its being in violation of any law of this state; for while the bequest is in words to “The Baptist Theological Seminary in South Carolina,” they say there is such a seminary in South Carolina, duly incorporated by an act of the legislature of that state, passed on the 21st day of December, 1858, a copy of which act is exhibited with the answer, by reference to which act it will appear that the corporate name of the said seminary is “The Southern Baptist Theological Seminary;” but they say further, that it is a Baptist Theological Seminary, situated in South Carolina; that it is the only Baptist Theological Seminary in South Carolina; and that hence it is the Baptist Theological Seminary in South Carolina. They say further, that they are fully satisfied and believe that it was the intention of their said testatrix to make said bequest to “The Southern Baptist Theological Seminary,” and which she thus described as “The Baptist Theological Seminary in South Carolina;” and they are advised, under the facts hereinbefore stated, that the description is sufficiently definite to enable “the Southern Baptist ^Theological Seminary” to take the said bequest. They say further, that by the terms of the charter of “the *505 Southern Baptist Theological Seminary,” it is empowered to hold, possess and enjoy all property, real and personal, which may be given, granted or devised to it, provided that the sum so held should not at any one time exceed in value the sum of five hundred thousand dollars; and they say that the full value of this bequest cannot by any possibility make the whole property now held by it exceed a small fraction of that sum. They say further, that they are not aware of any law of this state which is violated by the said bequest; that the provisions of the Code of 1860, chapter 80, section 2, may by implication (and, if at all, it is only by implication) make void bequests to theological seminaries in this state, but that “the Southern Baptist Theological Seminary” is not in this state, but in the state of South Carolina, and cannot by any fair construction, either of long usuage or law, be embraced within the prohibition of the statute referred to. They say that the provisions of the said statute were enacted for certain reasons of state policy, in order to prevent religious institutions from acquiring property, which might be used as an element of power in the state, and grew out of the strong feeling of opposition entertained by the people of this state to anything that might tend to a reunion of church and state, as it formerly existed in this commonwealth, and cannot by any sort of intendment be made to apply to a bequest to a theological seminary in another state, incorporated and authorized to hold property by the law of that state. And they say further, that they are advised that the bequest of “bonds” will embrace judgments which were obtained on said bonds prior to the death of the testatrix; and that they believe that the testatrix intended by this bequest to donate to this seminary all her private securities.
Exhibit A, filed with the said answer is a copy of the charter of the “Southern Baptist Theological Seminary, ” and corresponds with the description given of it in the said answer.
The following facts were admitted by the parties to the suit, to be considered by the court as if they had been properly proven by the depositions of witnesses regularly taken and filed, to wit: that there is an institution of learning situated at Greenville in the state of South Carolina, properly incorporated, and authorized to take and hold property by an act of the legislature of the state of South Carolina, and that its chartered name is the “Southern Baptist Theological Seminary. ” That the printed act of incorporation, referred to in and filed with the answer of the defendants, is a true copy of the said act of incorporation. That said seminary, as its name imports, is a “theological seminary”; that it is under the control and management of the Baptist denomination, and is a Baptist “theological seminary”; that, as already stated, it is the only ‘ ’Baptist Theological Seminary” in the state of South Carolina; that the value of the property now held by the “Southern Baptist Theological Seminary” does not reach the sum of five hundred thousand dollars, nor would the bequest made by the testatrix, Mary J. Roy, to “the Baptist Theological Seminary in South Carolina,” in controversy in this cause, if added to the property now held by the Southern Baptist Theological Seminary, make its value reach that sum. It was further admitted that the said testatrix, in making said bequest, had reference to “the Southern Baptist Theological Seminary,” which, in the said bequest, is spoken of and described as “the Baptist'^Theological Seminary in South Carolina;” though this admission was made by the plaintiffs, subject to the operation of any rule of law respecting evidence in such cases, if there be such as would preclude the defendants from offering proof of this fact. It was further agreed that the Southern Baptist Theological Seminary, situated at Greenville, is duly and properly a party to this suit.
On the 17th day of July 1871, the cause came on to be heard on the bill, answer, replication, exhibits and agreement of facts. On consideration whereof the court was of opinion that the bequest contained in the fifth clause of the said will, to the “Baptist Theological Seminary of South Carolina,” is, by the policy and laws of the state of Virginia, inoperative and void; and being so, that the said court could not give effect to said bequest, though the validity of such bequest be recognized and sanctioned by the policy and laws of the state of South Carolina, where(the said Baptist Theological Seminary is located; and as to the subject embraced in and intended to be bequeathed by said clause of said will, that the said Mary J. Roy died intestate. The court being further of opinion that the term, bonds, used by the testatrix in the said fifth clause of her will, does not include judgments or simple contracts, therefore decreed that the defendants, the executors of said Mary J. Roy, should render before one of the commissioners of the court an account of all the estate of said testatrix which had come to their hands under the said fifth clause of said will, judgments and open accounts not being included, &c. Erom this decree the said executor applied to a judge of this court for an appeal; which was accordingly allowed.
Parol evidence is always admissible and even necessary *to lead us to the person or object and subject referred to in a bequest. The court of construction, with the testator’s will in hand, looks for the object of his bounty and the thing intended to be given, and expects them to answer precisely the terms of description given of them in the will. Generally they do, and there is no difficulty. Often they do not; and sometimes there are two or more objects or subjects which answer precisely or equally the description contained in the will. In such cases resort must be had to parol evidence and the surrounding circumstances to show what the testator *506 intended by the expressions which he used; and, almost always, his intention is thus ascertained with sufficient if not unerring-certainty. If it cannot be, the bequest must then fail of effect; but the court is always reluctant so to declare. It will not ■require that the object or subject shall have every ear-mark given to it by the testator. JSTay, it may in some respects have different ear-marks, and yet the description contained in the bequest may be sufficient to give it effect. Raisa demonstratio non nocet cum de corpore constat, is a maxim which expresses a rule of construction to which the court has frequent recourse in such cases.^
According to these principles there cannot be a doubt but that “the Southern Baptist Theological Seminary,” incorporated by an act of the legislature of South Carolina, ratified on the'21st day of December 1858, was the object of the bounty of the testatrix, Mary Juliet Roy, in the fifth clause of her will; in which the said corporation is described as “the Baptist Theological Seminary in South Carolina.” This would have been the case had there been no express agreement of the parties, that the said corporation was referred to in the said description. But the *“facts agreed” contain an express admission of that fact. To be sure, it is' said that “this admission is made by the plaintiffs subject to the operation of any rule of law, respecting evidence in such cases, if there be such, as would preclude the defendants from offering proof of this fact. ’ ’ We have seen, however, that there is no such rule of law, but the contrary. It may therefore be regarded as a well established fact in this cause, that the said bequest is not void for uncertainty, but that “the Southern Baptist Theological Seminary” aforesaid is entitled to the benefit of the same, if it be otherwise a valid bequest. We therefore proceed now to consider whether it be so valid or not.
There can be no doubt but that generally a testator, domiciled in this state, may, by his will, duR- executed and admitted to probate, according to the laws of this state, make a valid bequest to a corporation chartered by another state, and authorized by its charter to take and hold property.
The Southern Baptist Theological Seminary is a corporation chartered by the state of South Carolina, and authorized by its charter to take and hold property; and the bequest in question was made to it by a testatrix domiciled in this state, by her will duly executed and admitted to probate according to the law of this state. Why then is not the said bequest valid?
Certainly it is competent for the legislature of this state to prohibit altogether a bequest to a corporation of another state, and a fortiori to prohibit such a bequest in a particular or special case.
There has been no such prohibition generally, or altogether. Has there been any particular or special prohibition which applies to the case under consideration?
The appellees contend that there has been, while *the appellants contend for the contrary; and this is the main subject of controversy in this case.
The appellees contend that our law prohibits any bequest to a theological seminary, whether it be in or out of the state, while the appellants contend that our law does not prohibit a bequest to an incorporated theological seminary, authorized by its charter to take and hold property, whether such corporation be in or out of the state.
The law on which the appellees rely is contained in the Code (of 1873), ch. 77, (j 2, which declares that “every gift, grant, devise or bequest which, since the second day of April in the year one thousand eight hundred and thirty-nine, has been, or at any time hereafter shall be, made for literary purposes, or for the education of white persons within this state (other than for the use of a theological seminary) ;” and similar words are then used in regard to the education of colored persons within this state, after which the law proceeds: “whether made in either case to a body corporate or unincorporated, or a natural person, shall be as valid as if made to or for the benefit of a certain natural person, ’ ’ &c.
Certainly this is the only law of this state which can have the effect, if any can, of invalidating the bequest in question. Can this law have that effect?
It has been always settled as a general rule, that a devise or bequest, indefinite as to its object or purposes, was on that account void. In England the subject of charities has long, if not always formed an exception to that rule; either at common law or in virtue of the statute of 43 Eliz., commonly called the statute- of charitable uses. But ever since the decision of the cases of the Baptist Association v. Hart’s ex’ors, 4 Wheat. R. 1, by the Supreme court of the United ^States, and Gal-lego’s ex’ors v. The Attorney General, 3 Leigh 450, by this court, it has been considered to be well settled that the English law of charities does not exist in this state, and that with the exception thereafter made by statute, which will be present^' noticed, “charitable bequests, ” in the language of Judge Carr, in the latter case, “stand on the same footing with us as all others, and will alike be sustained by courts of equity.” So that the bequest in the case now under consideration being to a corporation duly authorized to accept and hold the subject of the bequest, and being definite as to its object and purpose, is" undoubtedly valid; although the legatee is a theological seminary, unless there be something in a subsequent statute, which -makes it void. Whether there is or not is now the subject or our enquiry.
The law as thus settled, remained unaltered until April 2, 1839, when an act was passed entitled “an act concerning devises made to schools, academies and colleges.” Acts of Assembly 1839, p. 11, chap. 12. That act contains eight sections, the last of which merety declares that it shall be in force from the passing thereof. The first *507 section enacts, “that all devises or bequests of lands, tenements, hereditaments, goods and chattels, stocks and choses in action hereafter given or made for the establishment or endowment of any incorporated school, academy or college within this commonwealth, for the education of free white persons, shall be good and valid in law and equity, except as is hereinafter provided.” The remaining sections point out the mode to be pursued in such cases, to give effect to the charity; the validity of which is made by the seventh section to depend upon, ■whether the legislature will incorporate such school, academy or college, or not. And that section concludes *in these words: “provided, that nothing in this act contained shall be so construed as to give validit3r to any devise or bequest to any theological seminary.” On the 10th day of March, 1841, an act was passed entitled “an act concerning the estate of Martin Dawson, deceased, and for other purposes; Acts of Assembly 1840-’41, p. 52, chap. 26. The main object of that act was to give effect to Martin Dawson’s will, making a devise and bequest for literary purposes; but the sixth section of the act is general in its nature, and is in these words: “That if any person shall hereafter (by gift in his lifetime or by his last will and testament) give any sum of money or other property, real, personal or mixed, to the president and directors of the literary fund for the use of any county or counties, or any incorporated city, town or borough, or directly to such county or counties, or to such city, town or borough, the same may be taken and held by the president and directors of the literary fund, or by the county or corporation courts, as the case may be, to be disposed of in manner and form, to all intents and purposes, as such donor or testator or testatrix may have prescribed: provided, however, that all such gifts or devises shall be restricted to literary purposes or purposes of education.” In that act, it will be observed nothing is said about a theological seminary, and, like the said act of 1839, it is confined to the subject of indefinite charities for literary purposes. In the Code of 1849 these two acts are revised and digested; and chapter 80 of that Code contains such revision and digest, which are also contained in the same chapter of the Code of 1860. In the Code of 1873 they are contained in chapter 77, pages 667-670, which chapter embraces also the provision of the act of 1872-’3, chapter 265, page 243, in regard to colored ^'persons. There is no material difference, so far as the principle involved in this case is concerned, between the acts aforesaid and the revision and digest of them contained in the several codes as aforesaid. In the codes, the subject of a theological seminary is referred to only in these words in brackets (other than for the use of a theological seminary). And thris stands our law on the subject now, and thus it stood when Mrs. Roy’s will was made and recorded. Does that law invalidate the bequest made by her to the Southern Baptist Theological Seminary?
We are clearly of o£>inion that it does not. We think its only purpose was, and only effect is, to make valid a certain class of indefinite charities, to wit: charities for literary purposes; but to except from that class thus made valid’ an indefinite charity to a theological seminary. Why that exception was made it is 'not material to en-quire, though it might not be difficult to point out the motive of the legislature. But certainly that exception to an exception cannot have the effect, and could never have been intended to make invalid a definite bequest to an incorporated theological seminary, expressly authorized by its charter to take and hold property given to it by bequest or otherwise. Such a bequest had always been valid in this state if not everywhere else. The purpose of the acts of 1839 and 1841 was to make valid a certain class of donations which had never been valid before, but to make an exception in that case only of a theological seminary. They were enabling acts, which were not to extend to a theological seminary; but certainly they were not intended, and cannot have the effect to disable an incorporated theological seminary to take and hold property according to its charter, which it had always before a perfect right to do. A ^'bequest to a corporation, as a mere trustee for indefinite purposes, not embraced in the purview of the acts aforesaid, would be void for uncertainty, because there must in general be certainty as to the cestuis que trust, and as to the objects of the trust in every case of trust, in order to make it valid. Certainty only as to the trustee is not sufficient. But a bequest to a corporation, for the general purpose of its incorporation, is not indefinite nor uncertain in any respect. Such is the bequest in this case.
There is certainly nothing in the constitution which inhibits a bequest to a theological seminary; and we have seen that there is nothing in the statute law which inhibits a bequest to such a seminary if it be incorporated. Nor is there anything in the policy of our law, as has been argued, which can make such a bequest unlawful. The policy of our law on the subject extends no further than the law itself has extended. The law has extended only to this, that in giving effect to indefinite charities for literary purposes it has made an exception of a theological seminary, and that is the only extent of the policy of the law. The law has left unaffected the right to make a bequest for a certain and definite object, though it be a theological seminary; and if such a right be not in pursuance of the policy of the law, it is certainly not contrary to it. The sense of the legislature on this subject, as was well said in argument by the counsel for the appellants, appears from the act passed Eebruary 28, 1854, entitled “an act incorporating the Protestant Episcopal Theological Seminary and High School in Virginia.” Acts of Assembly, *508 1853-’4, p. 65, chap. 107. Suppose the bequest in this case had been made to that corporation, instead of the, corporation of “the Southern Baptist Theological Seminary,” *would anybody have doubted its validity? or, suppose the Southern Baptist Theological Seminary had been incorporated by the State of Virginia instead of South Carolina, and the bequest in this case had been made to it, would anybody have doubted its validity? These questions must be answered in the negative. What difference then can it make that the bequest was made to a theological seminary incorporated by a sister state, and fully authorized by its charter to take and hold property? None whatever, as what we have already said clearly shows.
Even if it could be said that the policy of our law forbids the execution of such a trust in this state there is certainly nothing in the policy of the law of South Carolina, where the trust created in this case was intended to be executed, which forbids it. 'And the will having been executed and admitted to probate, according to the law of this state, the domicil of the testatrix, the fund would have to be paid over to the foreign corporation to be administered according to the law of that state. The authorities cited by the counsel for the appellants fully sustain this proposition. Hill on Trustees, pp. 468, 457, and the cases cited in the notes, and Chamberlain v. Chamberlain, 43 New York R. 424, decided in 1871. If the law of Virginia prohibited a bequest to á theological seminary, wherever situate, and whether incorporated or not, then, certainly, such a bequest would be invalid, no matter where the object might be located, whether in or out of the state. But we have seen that our law prohibits such a bequest to no such seminary, except in the single case of a bequest which is indefinite and uncertain, and therefore void on the principles of the common law.
We are therefore of opinion that the bequest in this *case is valid. And the only remaining question to be considered is, what was intended to be embraced by the words “all 'my bonds now due me, ’ ’ contained in the bequest? Were they intended -to embrace bonds on which judgments had been obtained, or only bonds on which no judgments had been obtained by the testatrix. It appears to be conceded on both sides that there were bonds of each class, though the record does not show how many or what amount there are of each class. The words of the bequest are very comprehensive, as much so as general words possibly can be, “all my bonds now due me.” If the testatrix had added the words “whether judgments have been obtained upon them or not,” or “including those on which judgments have been obtained,” her intention to embrace all would have been perfectly certain. But is not such intention expressed with sufficient certainty by the word “all,” which is broad enough to embrace both classes of bonds, and which is not limited to one only of these two classes by any expression contained in the will. We know that a judgment is higher security than a bond, and that a lawyer in enumerating securities would be apt to call a judgment by that name though it had been obtained upon a bond. But a testator, who is often inops consilii when he makes his will, and generally unlearned, would not be apt to notice that distinction. He would be apt to speak of a bond as such, though it had passed into judgment, and he had thereby acquired a lien upon the debtor’s land and a right at any time to sue out execution on the judgment. We can see no reason why the testatrix should have intended in her bequest to except from the words “all my bonds,” &c., such as she may have obtained judgment upon, and as to them to die intestate. We therefore think she intended *to embrace all her bonds then due her, whether judgments had been obtained upon them or not. But we do not think any debt due to her by simple contract is embraced in the bequest, whether judgment had been obtained on it or not.
We are of opinion, for the reasons aforesaid, that the decree of the Circuit court is erroneous and ought to be reversed and annulled, and the cause remanded to the said Circuit court for further proceedings to be had therein in conformity with the foregoing opinion.
The decree is as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the decree appealed from in this cause is erroneous; therefore it is decreed and ordered that the same be reversed and annulled, and that the appellees, the complainants in the court below, do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And this court proceeding to enter such decree as the. said Circuit court ought to have entered, . it is further decreed and ordered, and is hereby declared that the bequest contained in the fifth clause of the will of the testatrix, Mary J. Roy, deceased, to “the Baptist Theological Seminary in South Carolina” was intended by the testatrix to be made to “the Southern Baptist Theological Seminary,” an institution of learning incorporated by an act of the leg--islature of South Carolina ratified on the 21st day of December 1858, in the proceedings in this cause mentioned; that the description given of the said corporation in the said bequest is sufficient; that there is nothing in the policy or laws of the state of Virginia which makes the said bequest inoperative or void, but, on the contrary, the same is legal and *valid; that the said corporation is entitled to the benefit of the said bequest, and to receive the subject thereby bequeathed; and that the words “all my bonds now due me,” contained in the said bequest, embrace, not only her bonds on which no judgments had been rendered, but also her bonds on which judgments had been rendered, to the benefit of which judgments the said corporation is *509 entitled under the said bequest; but do not embrace debts due to her by simple contract, whether judgments had been obtained upon them or not.
And as the complainants in their bill in this cause besides seeking to have the said fifth clause of the said will declared and decreed to be inoperative and void, and the property named therein distributed between them, also ask for an account of the transactions of said executors, and of all the property of which the said testatrix died seized and possessed, which she did not dispose of by her said will, and for general relief; it is ordered that this cause be remanded to the said Circuit court to be further proceeded in to a final decree, as may be proper and in conformity with the foregoing opinion and decree. Which is ordered to be certified to the said Circuit court of the county of Essex.
Decree reversed.