# Richmond

WALTER N. MAGUIRE AND GUY PARKHURST ESTES, ET ALS. v.
FRANK STONE LOYD AND J. EASLEY EDMUNDS, JR., EXEC'S, &C.*

December 3, 1951.

Record No. 3841.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

---

* REPORTER'S NOTE.—Rehearing granted January 23, 1952.

The opinion states the case.

*Ellsworth Wiltshire, Marion W. Jones* and *Caskie, Frost, Davidson & Watts,* for the appellants.

*Edmunds, Whitehead, Baldwin & Graves,* for the appellees.

SMITH, J., delivered the opinion of the court.

The purpose of this appeal is to determine the validity of a trust for the benefit of a church, the corpus of which is valued at more than $375,000.

About two years prior to her death on February 2, 1945, Mary Louise Peck Stone, a widow, hereinafter referred to as "Mrs. Stone", executed her last will and testament by which she bequeathed and devised the remainder of her estate as follows:

"FIFTEENTH: I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, and wheresoever situated, which I may own or be entitled to dispose of at the time of my death, to my Trustees, hereinafter named, in trust nevertheless, for the following uses and purposes:

"(a) To collect, receive, invest and reinvest the same and pay the net income therefrom to my daughter, GRACE STONE KELLER, during the term of her life.

"(b) Upon the death of my said daughter, GRACE STONE KELLER, to pay said net income to, or in the absolute discretion of my said Trustees, to expend said net income for the

benefit of the FIRST CHRISTIAN SCIENCE CHURCH OF LYNCHBURG, VIRGINIA. All income paid by my said Trustees to, or expended by them for the benefit of, the FIRST CHRISTIAN SCIENCE CHURCH OF LYNCHBURG, VIR-GINIA, shall be used exclusively for one or more of such purposes as are exempt from inheritance or transfer taxes under the laws of the United States and the State of Virginia.''

In her will Mrs. Stone nominated as executors her daughter, Grace Stone Keller, a resident of Lynchburg, Virginia and her sole heir at law and distributee, and Walter N. Maguire and Guy Parkhurst Estes, nonresidents of Virginia. These executors are. hereinafter referred to as ''Mrs. Stone's executors''. She also appointed these same three persons as trustees of the trust created therein. These trustees and the successor of one of them are hereinafter referred to as ''will trustees''.

The exectuors and trustees named in the will qualified and entered into bond in the penalty of $630,000.

Grace Stone Keller, hereinafter referred to as ''Mrs. Keller'', subsequently died and no substitute executor was appointed in her stead, but Wallace Greene Arnold, a nonresident of Virginia, was appointed by the will trustees as substitute will trustee in the manner provided in the will.

The trial court found that Mrs. Stone in her reference to the ''First Christian Science Church of Lynchburg, Virginia'', intended to name the ''First Church of Christ, Scientist, of Lynchburg, Virginia'' as the object of her bounty and the beneficiary of the trust. The trustees of this church are elected by the congregation and appointed by the Corporation Court of the city of Lynchburg according to section 57-8 of the Code of Virginia, 1950, and at present consist of the appellants, Frances S. Williams and Elsie Fitzgerald, hereinafter referred. to as ''church trustees''. The governing body of the church is known as the board of directors.

It will be observed from a reading of paragraph Fifteenth of the will that the trust thereby created was for two distinct, separate and successive uses and purposes. The first of these constituted a private trust for the benefit of Mrs. Keller during her life. The second of these uses and purposes constituted what is sometimes referred to as a ''religious trust'' which, especially in Virginia, is a distinctive type of charitable trust.

Mrs. Keller died testate on August 7, 1948, and her will with

codicil was duly admitted to probate. Her son, Frank Stone Loyd, and J. Easley Edmunds, Jr., nominated as executors in the will, duly qualified. These executors are hereinafter referred to as "Mrs. Keller's executors". In her will Mrs. Keller left all the rest and residue of her estate to her son, Frank Stone Loyd, in fee simple absolute. He and his brother, Sidney Miller Loyd, are the sole heirs at law and distributees of Mrs. Keller.

At the time of Mrs. Keller's death the First Church of Christ, Scientist, of Lynchburg, Virginia, had money, securities, and other personal estate aggregating $13,300, exclusive of books and furniture, and the corpus of the trust in the hands of the will trustees consisted entirely of personal estate (all the realty having been sold as authorized by the will).

The appellees (Mrs. Keller's executors) filed their bill in chancery at first September rules, 1949, against the appellants (Mrs. Stone's executors, the will trustees, and the church trustees) praying that the disposition in remainder of the residuum of Mrs. Stone's estate, set out in paragraph Fifteenth of her will, be declared void and of no effect, because it failed to comply with the laws of Virginia governing the disposition of property for religious purposes and, because it violated the rule against perpetuities.

The holding of the trial court can be briefly stated as follows: (1) The church referred to in the will is the First Church of Christ, Scientist, of Lynchburg, Virginia. (2) The trust was validated by section 57-7 of the Code of 1950, but limited by section 57-12 of the Code of 1950, to $86,700 ($100,000 less $13,300, the amount of intangible personal property stipulated to have been held by the church trustees at the time of Mrs. Keller's death) and as so limited must be administered by the church trustees. (3) Counsel for the will trustees are entitled to a fee of $12,500 for their services.

The appellants' assignments of error and the appellees' assignments of cross-error raise the following questions: (1) Is the trust created by Mrs. Stone's will valid in whole or in part and, if valid in whole or in part may it be administered by the will trustees? (2) Is the trust subject to the limitation prescribed by section 57-12 of the Code? (3) Does the trust violate the rule against perpetuities? (4) Are Mrs. Keller's executors proper parties to raise the question as to the application of

section 57-12? (5) Is the fee allowed counsel for the will trustees excessive?

We turn our attention to the first question to be decided: Is the trust created by Mrs. Stone's will valid in whole or in part and, to the extent that it is valid, may it be administered by the will trustees?

Appellees contend that the trust is void in its entirety, because it fails to comply with the legislative requirements of section 57-7 which, as contended, limits the uses of the property given for religious purposes to such objects as may be determined by the trustees of the beneficiary congregation by and with the approval of the church authorities having charge of the administration of the temporalities thereof.

Charitable trusts and especially religious trusts have had an interesting but turbulent history in this State. The case of *Moore* v. *Perkins,* 169 Va. 175, 192 S. E. 806, gives an excellent summary of the legal history of charitable trusts in Virginia and very succinctly states the common law, on page 177, as follows:

"It is well settled in this Commonwealth, by decisions running back more than a hundred years, that a trust for indefinite beneficiaries, if the named trustee is an individual or an unincorporated body, is invalid unless expressly validated by statute. See *Fitzgerald* v. *Doggett,* 155 Va. 112, 155 S. E. 129, 136; *Gallego* v. *Attorney General,* 3 Leigh (30 Va.) 450, 24 Am. Dec. 650."

There can be no doubt that the trust with which we are herein concerned is invalid unless it has been validated by legislative enactment.

Religious purposes have been considered as among charitable purposes and charitable trusts have been deemed to include trusts for religious purposes in England and in most of our States for many years. See 3 Scott on Trusts, § 371; Restatement of the Law of Trusts, § 371. But such has not been the situation in Virginia. See 2 Bogert on Trusts and Trustees, § 322. In the case of *Moore* v. *Perkins, supra,* the opinion, at page 182, refers to the decision in the *Gallego Case* and relates the beginning of the law in this State as follows:

"While the decision makes no distinction between a trust for religious use, and a trust for any other charitable purpose, the evil resulting from trusts for religious purposes was emphasized in the opinion. It was there suggested that if the

people of the Commonwealth desired to legalize any such trust, it should be done through legislative enactment. Following this suggestion the legislature, in validating charitable trusts, made a marked distinction between trusts for religious purposes and trusts for literary or educational purposes. See chapters 77 and 80 of the Code of 1849, and chapters 64 and 65 of the Code of 1887.''

The distinction between trusts for religious purposes and trusts for literary or educational purposes has continued down to the present time. Therefore, our discussion herein will be confined to trusts for religious purposes. The law on this subject is now found in Title 57, chapter 2, of the Code of Virginia, 1950, and is particularly embodied in sections 57-7 and 57-12. It is conceded that the only legislation that can be relied upon to validate the trust herein, either in whole or in part, is section 57-7. This section uses the words ''church or religious congregation'' and these have been construed to mean a local unincorporated body, *Moore* v. *Perkins, supra,* and such is the church with which we are herein concerned.

At this point we wish to make it clear that the church herein considered is not the type of church mentioned in section 57-16 of the Code of 1950, and the provisions of that section do not apply to this case. Furthermore, subparagraph (7) of section 57-16 provides that, ''This section shall not be so construed as to effect an implied repeal of any other provisions of this chapter''.

The evolution of section 57-7 begins with the Acts of 1841-42, chapter 102, page 60. This act validated every conveyance, devise, or dedication of land made since January 1, 1777, and every conveyance of *land* made thereafter for the use or benefit of any religious congregation as a place for public worship, or as a burial place, or a residence for a minister. It also limited the quantity of land which the church trustees could take or hold at any one time. Over the years successive acts have enlarged the purposes for which a religious congregation may acquire land, but the limitation on the quantity of land taken or held at any one time by the church trustees still exists.

For sixty years after the legislature pronounced the law in this State relating to conveyances of *land* for the use or benefit of any religious congregation, no legislation was enacted in regard to transfers of *personal property* for religious purposes.

Finally, the Acts of 1901-02, chapter 323, page 336, herein-

after referred to as the "1902 amendment", made sweeping changes in our laws. The language of that enactment is now found substantially unchanged as the second sentence of section 57-7 of the Code of 1950. It added the following language to the Code of 1849, as originally enacted in 1842, and subsequently amended:

"And no gift, grant, or bequest hereafter made to such church or religious congregation, or the trustees thereof, shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such gift, grant, or bequest in any case where lawful trustees of such church or congregation are in existence, or said congregation is capable of securing the appointment of such trustees upon application as prescribed in section thirteen hundred and ninety-nine [section 57-8 of the Code of 1950] ; but such gift, grant, or bequest shall be valid, subject to the limitation of section fourteen hundred and three [section 57-12 of the Code of 1950] : provided, that whenever the objects of any such trust shall be undefined, or so uncertain as not to admit of specific enforcement by the chancery courts of the Commonwealth, then such gift, grant, or bequest shall enure and pass to the trustees of the beneficiary congregation, to be by them held, managed, and the principal or income appropriated for the religious and benevolent uses of said congregation, as said trustees may determine, by and with the approval of the vestry, board of deacons, board of stewards, or other authorities which, under the rules or usage of said church or congregation, have charge of the administration of the temporalities thereof."

Thus the first part of the 1902 amendment nullified the rule of the *Gallego Case* and *Fifield v. Van Wyck,* 94 Va. 557, 27 S. E. 446, 64 Am. St. Rep. 745, by providing that, with respect to voluntary transfers to a trust or trusts for a local religious congregation, the grounds of invalidity recognized in those cases should not thereafter render such transfers void.

The appellees urge that the trust is wholly void because the will trustees may expend the net income from the trust for non-church purposes. The terms of the trust answer this contention. It is clear that under the terms of the trust the net income therefrom is to be devoted exclusively to benefit the First Church of Christ, Scientist, of Lynchburg, Virginia. In no event and under no circumstances may the net income be

used for any purpose other than to benefit the church. The will trustees are directed to pay the net income to the church or expend it for the benefit of the local church. The only discretion vested in the will trustees is whether to pay the net income to the church or expend it for the benefit of the church. In either event, under the terms of the will, they must devote the net income for the benefit of the church and for no other purpose.

The first part of the 1902 amendment commences with the words, "And no gift, grant, or bequest hereafter made to such church or religious congregation, or to the trustees thereof * * *". This clearly covers any mode of voluntary transfers of personal estate whether *inter vivos* or testamentary. No limitation or restriction as to the manner of effecting such voluntary transfers is in any way indicated by this amendment. The fundamental purpose of the validating part of the 1902 amendment was to save voluntary transfers for the benefit of local churches in whatever manner such transfers might be made. Even if it be conceded, for the purpose of discussing the general question of validity, that the machinery for administration set up in the will does not comply with the *proviso* of the 1902 amendment, or is in conflict therewith, and that the method for administration of the trust set up in the act is the sole method of administration, it does not follow that the trust is wholly void. The dominant and paramount intent of Mrs. Stone in creating the trust herein was that the local church should enjoy the benefit of the net income therefrom. Everything else relates merely to the means or machinery she preferred to be used in accomplishing that object. There was but one object—to benefit the local church, and section 57-7 made that possible.

"In all gifts for charitable uses, the law makes a very clear distinction between those parts of the writing conveying them which declare the gift and its purposes and those which direct the mode of its administration—a distinction which is quite inevitable, for it is founded in the nature of things. This distinction must be carefully observed, otherwise there is a risk of inverting the natural order of things by subordinating principles to form, the purpose to its means, the actual and executed gift for a known purpose to the prescribed modes of administering it that are intended for adaptation to an unknown future, and of thus making the chief purpose of the gift dependent on the very often unwise directions prescribed for its future security

and efficiency. Hence, it is the rule that where a gift for charitable purposes is otherwise valid, the fact that the donor has indicated an impracticable or illegal method of execution will not render it invalid and unenforceable. * * *" 10 Am. Jur., Charities, § 15.

"If a provision in the terms of the trust is illegal, the intended trust fails altogether if, but only if, the illegal provision cannot be separated from the other provisions without defeating the purpose of the settlor in creating the trust." Restatement of the Law of Trusts, § 65.

The next phase of the first question is the problem of the trustees. May the will trustees administer the trust as validated?

This leads to the determination of what interests in property may be the subject of the voluntary transfers validated by the 1902 amendment. The first part of the 1902 amendment contains no restriction or limitation as to the interests or estates in property which may be the subject matter of the "gift, grant, or bequest". If the legislature had any intention to extend validity only to certain interests or estates in property or only to legal interests as distinguished from equitable interests, such intent would have been manifested in the 1902 amendment. If no such restriction or limitation is expressed, none should be implied. Indeed, that equitable interests are to be included is unmistakably indicated from the first part of the 1902 amendment for it declares that insufficient designation of the beneficiaries in or the objects of "any trust annexed to such gift, grant, or bequest" shall not render the same void. The conclusion is inescapable that any interest in property, legal or equitable, that may be given or bequeathed is covered by the validating part of the 1902 amendment.

■ There is nothing in the language of the amendment to prevent a settlor from creating a trust for the benefit of a church or religious congregation and specifically providing the manner in which the trust corpus is to be administered. The act contains provisions for those cases where the settlor has not prescribed the administrative machinery or has prescribed a manner of administration which is either illegal or insufficient, but section 57-7 does not specifically require that all trusts be administered in the manner provided therein irrespective of the wishes and desires of the settlor as expressed in the instrument

creating the trust. There exist in Virginia many gifts, grants, or bequests to individual and corporate trustees for the benefit of churches or religious congregations and these have existed for years. A settlor in creating such a trust undoubtedly, in many instances, has good and sufficient reasons for designating individual or corporate trustees to administer the trust for the benefit of a church or religious congregation and there is nothing in the act to prevent him from doing that, subject to the limitations of section 57-12.

It is abundantly clear that the beneficiary of the trust created in Mrs. Stone's will is the congregation of the First Church of Christ, Scientist, of Lynchburg, Virginia, and that the net income from the trust is to be expended only for such tax-exempt purposes as will benefit the local church. In giving full effect to the expressed intention of Mrs. Stone the will trustees are charged with the duty to manage and administer the trust in accordance with the provisions of the will and pay the net income therefrom to the church trustees or expend such net income for religious and benevolent uses of the congregation.

Since the record and the briefs show that all of the trustees are nonresidents of the Commonwealth of Virginia, attention is called to the Acts of 1950, chapter 399, page 724 (section 26-59, 1950 Cumulative Supplement, Code of Virginia, 1950). There should be a compliance with this act.

The second question involves the contention of the appellants that the bequest as validated by section 57-7 of the Code of 1950, does not infringe on the limitation imposed by section 57-12, and that the will trustees may take and hold *all* of the residuum amounting to more than $375,000. In fact, they contend that the will trustees can take and hold any amount of personal estate without reservation or limitation and that only the church trustees are limited in taking and holding at any one time more than $100,000, exclusive of books and furniture. This contention raises a novel question in this State and the answer must be found in the language of the 1902 amendment and its historical background, since no decision in point has been called to our attention nor have we been able to find any.

The 1902 amendment is entitled, ''Chap. 323.—An ACT to amend and re-enact sections 1398, 1403, and 1404 of the Code of Virginia, so as to enable religious congregations, churches, and

their trustees to take and hold personal estate". Section 1403 was amended by adding the following: "* * * and they [the church trustees] shall not take or hold at any one. time money, securities, or other personal estate exceeding in the aggregate, exclusive of the books and furniture aforesaid, the sum of thirty thousand dollars". This same wording is found in section 57-12 of the Code of 1950, except that the amount has been raised to $100,000. Thus it will be seen that so far as *personal property* is concerned, the entire enactment of 1902 constituted a *single* act of the legislature which is now codified in sections 57-7 and 57-12 of the Code of 1950. After validating gifts, grants, or bequests to such church or religious congregation, or the trustees thereof, it is provided in the act that "such gift, grant, or bequest shall be valid, subject to the limitation of section fourteen hundred and three:" [section 57-12 of the Code of 1950].

The law in effect since 1842 as to real property contained strict provisions as to the quantity of land and declared that the trustees should not take or hold at any one time more than two acres of land in a city or town or more than seventy-five acres of land in the country. It is hardly conceivable that when the legislature enacted the 1902 amendment it did not understand or appreciate the meaning of the restrictive language as it applied to real property, and did not have a definite purpose in mind when it chose to use identically the same language with reference to personal estate. When gifts, grants, or bequests were validated, the legislature, in the same breath, placed a restriction and limitation on the amount that could be *taken* or thereafter held. This underlying and fundamental policy of limiting the amount of personal estate, exclusive of books and furniture, has remained in the law to this day.

The Constitution of Virginia (1902), as. amended, Art. IV, § 59, provides that, "The General Assembly shall not grant a charter of incorporation to any church or religious denomination, but may secure the title to church property to an extent to be limited by law". This provision appeared in the Constitution at an early date of our history. The Constitution contains other provisions with reference to churches, religious congregations, and religious belief in Art. I, § 16 and Art. IV, §§ 58, 67, which must be considered in determining the proper construction of . section 57-12.

The language of Judge Tucker in the *Gallego Case* seems very pertinent since it shows the historical background of the 1902 amendment limiting the amount of personal estate to be taken or held by a church or religious congregation. He said, at page 477, as follows:

"No man at all acquainted with the course of legislation in Virginia, can doubt, for a moment, the decided hostility of the legislative power to religious incorporations. Its jealousy of the possible interference of religious establishments in matters of government, if they were permitted to accumulate large possessions, as the church has been prone to do elsewhere, is doubtless at the bottom of this feeling. The legislature knows, as was remarked by the counsel, that wealth is power. Hence the provision in the bill of rights; hence, the solemn protest of the act on the subject of religious freedom; hence, the repeal of the act incorporating the episcopal church, and of that other act which invested the trustees appointed by religious societies with power to manage their property: hence too, in part, the law for the sale of the glebe lands: hence the tenacity with which applications for permission to take property in a corporate character (even the necessary ground for churches and grave-yards) have been refused. The legislature seems to have been fearful, that the grant of any privilege, however trivial, might serve but as an entering wedge to greater demands. Nor did this apprehension of the dangers of ecclesiastical establishments, spring up for the first time with our republican institutions. The history of ages had attested the proneness of such establishments to vast accumulations of property, * * *."

In the light of the historical background, the constitution, and the legislative enactments, it is clear that the economic and resulting political power of churches was what was sought to be limited. The limitation contemplates a restriction on this power in all its forms, not only where the legal title is vested in the church or religious congregation, or the trustees thereof, but where the beneficial title, the right to use the fruits of the corpus of the gift, grant, or bequest, is vested in the church or religious congregation, or the trustees thereof. It cannot be denied that the right to use the fruits of a fund of more than $375,000, in perpetuity, is a very valuable right involving considerable economic power and potential influence. Can there be any doubt that the economic power of churches which the legis-

lature intended to restrict and which the Constitution directed should be restricted does not include the value of beneficial interests? We think not.

The fundamental underlying purpose of the legislature was to fix a monetary limit on ownership of personalty by churches, exclusive of books and furniture. This purpose may not be thwarted by an attempt to do indirectly that which cannot be done directly. The limitations prescribed by section 57-12 include economic wealth in the form of personal estate under whatever guise it is maintained so long as the church is the sole beneficiary of the income therefrom, and the $100,000 limitation must be taken to include the corpus of trust funds in the hands of trustees other than the church trustees and all other personal estate of the church, exclusive of books and furniture.

The third question involves appellees' contention that the trust is void in whole, because it violates the rule against perpetuities. There is no merit in this contention. The trust in the case at bar is a religious trust which, in this State as before mentioned, is a special type of charitable trust. The general principle is applicable here and that is to the effect that the rule against perpetuities does not apply to charitable trusts. See *Shenandoah Valley Nat. Bank* v. *Taylor,* 192 Va. 135, 63 S. E. (2d) 786; 3 M. J., Charitable Trusts, § 3; 10 Am. Jur., Charities, § 17; 14 C. J. S., Charities, § 1-f.

The fourth question involves appellants' contention that Mrs. Keller's executors are not proper parties to raise the issue as to the application of section 57-12. The trial court answered this contention in the following language:

"Confusion sometimes exists with reference to proper parties as between suits attacking the validity of a will as a will, and those attacking the validity of a term or provision of a will: and between those to *enforce* the provisions of a trust or matters of administration of the trust, and those attacking the *validity* of the trust. In this suit there is no attack being made on the validity of the testatrix's will as a will, but upon the validity of a term or provision of her will; and this suit is not for the purpose of enforcing a trust, nor, as brought by the complainants, is it with reference to the administration of a trust, but is a suit seeking to have declared void the entire trust here involved.

\*   \*   \*   \*   \*   \*

"Our view is that any party in interest, any party to

whom the trust estate or part thereof would pass or belong if the trust be held invalid, is the proper party to bring this suit to determine the validity of the trust."

In 2 Bogert on Trusts and Trustees, § 417, it is said, "The question of the power to attack a charitable trust and seek to get a decree that it is void, is entirely distinct from that of enforcement. Any one who will benefit financially by the decree that the charitable gift is void may bring the suit to attack. The interest of the attacker must be something more than nominal."

In Virginia the specific question seems not to have been passed on, however, *Thomas* v. *Bryant*, 185 Va. 845, 40 S. E. (2d) 487, 169 A. L. R. 257, presented a similar situation. There suit was instituted by heirs of the testator, the object of which was to obtain a construction of the will and a declaration by the court that a clause in the will was void in so far as it attempted to create a charitable trust.

The executors of Mrs. Keller are here seeking to obtain a declaration by the court that the trust is void. They are proper parties to raise the question of the application of section 57-12.

■ The last question for decision is appellees' contention that counsel for the will trustees were allowed excessive fees for their services rendered in this cause. "The law is well settled that a trustee is vested with authority to employ counsel, if necessary, for the protection or preservation of the trust estate. The amount of counsel's compensation rests in the sound discretion of the court having jurisdiction of the subject matter." *Patterson* v. *Old Dominion Trust Co.*, 156 Va. 763, 159 S. E. 168. The trial court was thoroughly acquainted with the services rendered by counsel for the will trustees. We find nothing in the record to lead us to the conclusion that the fee allowed is exorbitant and, therefore, there has been no abuse of the trial court's discretion in allowing counsel fees.

In so far as it holds that the will trustees cannot administer the trust the decree is reversed and in other respects it is affirmed. The case is remanded for further proceedings not in conflict with the views herein expressed. The costs in this Court are to be paid by the estate of Mrs. Stone.

*Affirmed in part, reversed in part, and remanded.*