## WILLIAMS v. PROTESTANT EPISCOPAL THEOLOGICAL SEMINARY IN VIRGINIA et al.

### No. 11174.

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1952.

Decided June 12, 1952.

Writ of Certiorari Denied Oct. 27, 1952.

See 73 S.Ct. 105.

Messrs. Clarence E. Martin, Sr., Martinsburg, W. Va., of the Bar of the Supreme Court of West Virginia, pro hac vice, by special leave of Court, and Austin F. Canfield, Washington, D. C., with whom Mr. William T. Hannan, Washington, D. C., was on the brief, for appellant. Mr. Ralph F. Berlow, Washington, D. C., also entered an appearance for appellant.

Mr. Armistead L. Boothe, Alexandria, Va., of the Bar of the Supreme Court of Virginia, pro hac vice, by special leave of Court, with whom Messrs. A. G. Nichols, Jr., and Stanton C. Peelle, Jr., Washington, D. C., were on the brief, for appellee Protestant Episcopal Theological Seminary in Virginia.

Mr. John E. Larson, Washington, D. C., entered an appearance for appellee American Security and Trust Company.

Before PROCTOR, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

Appellant, Agra B. Williams, niece, next of kin and sole heir at law of Mary E. Maxwell, deceased, sued in the United States District Court for the District of Columbia for construction of Miss Maxwell's will and for a declaratory judgment. Miss Maxwell died March 1, 1949. Thereafter, but before this action was filed, her will was admitted to probate in the District of Columbia. Part of the residuary estate, consisting of personal property, was bequeathed to appellee Seminary, a Virginia corporation.[1] The bequest was as an endowment fund to be kept intact and invested by the Seminary, one-half of the net income to be used in establishing scholarships and the remaining one-half toward current expenses of the Seminary, as set forth with greater detail in the will.

The declaratory judgment sought is that appellant is entitled to this residuary estate, on the theory that the Seminary is precluded by the law applicable in Virginia from taking by will. The American Security and Trust Company, as executor, the Treasurer of the State of Virginia, and

[1]. The present correct name of the Seminary is the Protestant Episcopal Theological Seminary in Virginia.

The Virginia Military Institute[2] were joined as defendants.

■ There being no genuine issue of material fact the court, on motions for summary judgment filed by both appellant and the Seminary, granted that of the latter, holding the Seminary to be entitled to receive the estate bequeathed to it. The action accordingly was dismissed insofar as it pertained to the Seminary. Appropriate order having been entered under Rule 54(b), Fed.R.Civ.P., 28 U.S.C.A., the appeal is properly before us. David v. District of Columbia, 1950, 88 U.S.App.D.C. 92, 187 F.2d 204.

■■ We agree with the District Court that the law of Virginia applies and that under Virginia law the Seminary has capacity to take the bequest. We accordingly affirm the judgment.

The Seminary was incorporated by Act of the General Assembly of Virginia February 28, 1854. It is authorized by its charter "to hold, receive and purchase" lands, tenements, money and chattels not in excess of a specified amount. The authorized amount has been increased from time to time by the Virginia legislature and no question is before us in that regard. Virginia statutes in effect at the relevant times authorize non-stock corporations, such as the Seminary, to hold any property, real, personal or mixed, including that received by gift, purchase, grant, devise or bequest. The applicable provisions now appear as § 13–224, 3 Code of Virginia 1950.

In urging that the Seminary is not within this general rule appellant rests upon an intricate course of legislation and decision said to stem from a policy described more than a century ago as "hostility of the [Virginia] legislative power to religious incorporations." Gallego's Ex'rs v. Attorney General, 1832, 3 Leigh, Va., 450, 477.

The evolution of the law in Virginia on this subject could no doubt be more thoroughly and accurately analyzed today by her own courts than by ourselves. It is unnecessary for our purposes here to trace in detail this evolution.

When the will became effective Virginia statutes contained the following provision:

"Every gift, grant, devise or bequest which, since April second, eighteen hundred and thirty-nine, has been or at any time hereafter shall be made for literary purposes or for the education of white persons within this State and every gift, grant, devise or bequest which, since April tenth, eighteen hundred and sixty-five, has been or at any time hereafter shall be made for literary purposes or for the education of colored persons within this State, and every gift, grant, devise or bequest made hereafter for charitable purposes, whether made in any case to a body corporate or unincorporated, or to a natural person, shall be as valid as if made to or for the benefit of a certain natural person, except such devises or bequests, if any, as have failed or become void by virtue of the seventh section of the act of the General Assembly passed on April second, eighteen hundred and thirty-nine, entitled 'an act concerning devises made to schools, academies, and colleges.' Nothing in this section shall be so construed as to give validity to any devise or bequest to or for the use of any unincorporated theological seminary." 8 Code of Virginia 1950, § 55–26.

This provision was enacted in 1914 and appears in the Code of 1919 as § 587.[3] Under it a bequest for the education of white persons made since 1839, or for the education of colored persons made since

---

2. The other half of the residuary estate was bequeathed to The Virginia Military Institute. The validity of this bequest is involved in Williams v. Virginia Military Institute, 91 U.S.App.D.C. ——, 198 F.2d 980, argued with the present case.

3. While statutory provisions of somewhat similar character are to be found in Sec-

tion 1420 of Title 22 of the Code of 1887, these need not be considered here. See, also, Section 2 of Chapter 80, Title 23, of the Code of 1849; Section 2 of Chapter 80, Title 23, of the Code of 1860; and Section 2 of Chapter 77, Title 23, of the Code of 1873.

1865, and every bequest made after its enactment for charitable purposes, whether to a body corporate or unincorporated, or to a natural person, is valid, as it would be if made to or for the benefit of a definite natural person, except validity is not given to a bequest to or for the use of any unincorporated theological seminary.

Since appellee Seminary is not unincorporated the stated exception is inapplicable. From this it follows that if the bequest is for either educational or charitable purposes it is valid unless the reference to bequests which have failed under the Act of 1839 leads to a different result. That the present bequest is for educational or charitable purposes is clear from its terms, considered in conjunction with the character and purposes of the Seminary. These have long included the conferring of "the usual Academic and Theological Degrees" and the "degree of bachelor of divinity." The record shows that the charter of the Seminary has been acted upon often by the legislature of Virginia in the last 98 years. Virginia cannot be said to have been unaware of or to have failed to validate the corporate character and seminarian purposes of this institution. We cannot say that these are not educational or charitable or that they are too uncertain to comply with Virginia law.

Appellant argues, however, that the statute upon which we rely excepts from its provisions such bequests "as have failed or become void by virtue of the seventh section of the act of the General Assembly passed on April second, eighteen hundred and thirty-nine, entitled 'an act concerning devises made to schools, academies, and colleges.'" It is to be noted that this language is in the past tense—"have failed or become void." The Act of April 2, 1839, provided a means whereby, through legislative incorporation of beneficiaries, bequests to unincorporated schools or the like which might otherwise be invalid could be validated. Its seventh section contained a proviso that nothing in the Act "shall be so construed as to give validity to any devise or bequest to any theological seminary." Assuming *arguendo* that so long as this proviso remained unaffected a bequest to any theological seminary, incorporated or unincorporated, would have been invalid, the statute of Virginia when the present bequest became effective contained no such qualification respecting an incorporated theological seminary. The Maxwell bequest is governed by the law applicable when the Maxwell will became operative. Reference in such applicable law to the 1839 act precludes validation of a bequest which had become void under the earlier statute, but does not operate to continue the 1839 provision in effect so as to strike down a bequest made after its terms had been changed so as to make clear that such a bequest to a corporate theological seminary is valid.

It is unnecessary to appraise the situation as it might have existed prior to enactment of the statute applicable when the Maxwell will became effective. We note, however, that decisions and discussions of Virginia courts indicate that a bequest then made to a corporate institution, such as the Seminary, with its long legislative history in Virginia, would have been upheld. See Protestant Episcopal Education Society v. Churchman's Representatives, 1885, 80 Va. 718; Trustees of the General Assembly Presbyterian Church U. S. v. Guthrie, 1889, 86 Va. 125, 10 S.E. 318, 6 L.R.A. 321; Fifield v. Van Wyck's Ex'r, 1897, 94 Va. 557, 27 S.E. 446; and Roy's Ex'rs v. Rowzie, 1874, 25 Gratt. 599, 66 Va. 599. We do not base our decision, however, on these and other decisions which might be mentioned, all involving somewhat distinguishable factual situations. We rest upon the statutes in effect at the relevant time, clearly indicative of a legislative intent to permit a corporate theological seminary to receive by devise or bequest an educational or charitable beneficence. True it is in Virginia that certain charitable bequests of a religious character are governed, in some respects at least, by criteria differing from those generally applicable to charitable trusts, see, *e. g.*, Maquire v. Loyd, 1952, 193 Va. 138, 67 S.E. 2d 885; Moore v. Perkins, 1937, 169 Va. 175, 192 S.E. 806, but we find no statute or decision which causes such difference to affect this case.

We have considered the other questions raised and find them not meritorious. Under its charter and the statutes of Virginia the Seminary may receive the Maxwell bequest.

Affirmed.