Gary BATES, et al, Plaintiffs,

v.

Anthony CEKADA, et al, Defendants.

Civ. A. No. 89–651–N.

United States District Court.
E.D. Virginia,
Norfolk Division.

Feb. 15, 1990.

---

William T. Prince, Neal P. Brodsky, Williams, Worrell, Kelly, Greer & Frank, Norfolk, Va., for plaintiffs.

Samuel W. Meekins, Jr., Wolcott, Rivers, Wheary, Basnight & Kelly, Virginia Beach, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

DOUMAR, District Judge.

The plaintiffs, members of Our Lady of the Rosary Chapel (Rosary Chapel) and citizens of the Commonwealth of Virginia, brought this action on September 11, 1989 and filed an amended complaint on November 15, 1989. The defendants constitute the entire board of directors of Our Lady of the Rosary, Inc. (Rosary Corporation), a Virginia corporation, and are three of the priests who conduct worship services at Rosary Chapel. Defendants William Cekada and William Jenkins are citizens of Ohio, and defendant Clarence Kelly is a citizen of New York.

The plaintiffs' amended complaint alleges that, through the exercise of their directorships, the defendants have: controlled all the property of Rosary Corporation; failed to properly account for tangible personal property and money intended for the use and benefit of the members of Rosary Chapel; prohibited one plaintiff from entering the church property; and performed their duties as traditional Roman Catholic priests in an unsatisfactory manner. The amended complaint asks the Court to impose a constructive trust on the defendants' positions as directors of Rosary Corporation for the benefit of the plaintiffs and all members of Rosary Chapel. In addition, the plaintiffs ask the Court to order the defendants to hold an election of a new board of directors and to elect as successors persons chosen by the plaintiffs and all members of Rosary Chapel. Finally, the plaintiffs demand an accounting of the proceeds of the bequest of Octavie Ann Kossler Vitocolonna that was distributed to Rosary Corporation.

On October 30, 1989, the defendants filed a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. The defendants' motion argues that: the plaintiffs are not proper plaintiffs; the Court does not have proper jurisdiction because Rosary Corporation is an indispensable party; the plaintiffs have failed to state a claim upon which relief can be granted; and this case involves a nonjusticiable religious controversy. The parties appeared before the Court for a hearing on the defendants' motion on December 6, 1989. At that hearing the Court determined that Rosary Corporation was an indispensable party to this litigation. The Court, however, did not decide whether Rosary Corporation should be joined as a party plaintiff or a party defendant. The parties have submitted briefs on this issue and, for the reasons stated below, the Court finds that Rosary Corporation must be joined as an indispensable party defendant. Because

such joinder defeats diversity of citizenship between plaintiffs and defendants, the Court ORDERS that the plaintiffs' complaint be DISMISSED.

## I. FACTUAL BACKGROUND

Because the defendants have moved to dismiss under Rule 12(b), the Court must treat all well-pleaded allegations in the plaintiffs' complaint as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In 1979, some of the plaintiffs were instrumental in forming a corporation under the laws of Virginia called Traditional Catholics of Tidewater, Inc. (TCT). The purposes of the corporation as expressed in the articles of incorporation were as follows:

> The acquisition and maintenance of real property, the erection of buildings, the acquisition and maintenance of equipment and furnishings to be used as church buildings, rectory, educational buildings by all those who wish to practice the traditional Roman Catholic religion (the doctrine and sacraments existing at the time of the death of Pope Pius XII).

After its creation, TCT acquired title to real estate located at 521 McCosh Drive in Chesapeake, Virginia.[1]

TCT was a non-profit, non-stock corporation without members. The original board of directors consisted of three persons who would each hold office for a period of three years. Any future directors would be elected solely by vote of the original board of directors.

In 1980, several priests who were members of Marcel Lefebvre's Saredotal Society of St. Pius X (the Society), began to conduct traditional Roman Catholic worship services at Rosary Chapel.[2] The priests named their assembly Our Lady of the Rosary Chapel. The priests performed these services to the satisfaction of the members of Rosary Chapel, and they were paid for their services and reimbursed for their travel expenses by way of contributions from members made to the Rosary Chapel.

Thereafter, the members of the Rosary Chapel asked the society priests to perform religious services on a regular basis and the priests agreed. The priests also told the members of Rosary Chapel that the policies of the Society required that it control the church property. Accordingly, at a meeting of the directors of TCT on October 12, 1980, the original directors resigned and elected the defendants as their successors. The name of the corporation was changed to "Our Lady of the Rosary, Inc." and paragraph four of the articles was modified to read as follows: "the Directors of the corporation shall hold office until removed by a majority vote of the Board of Directors or until replaced by an election of the Board of Directors duly held." Since that time, the defendants have controlled all the property, contributions and maintenance of Rosary Corporation.

By will, Octavie Ann Kossler Vitocolonna, deceased, bequeathed all of her estate, both real and personal, to "Our Lady of the Rosary Catholic Church in Chesapeake, Virginia." The money was given for the purpose of erecting a shrine to the infant Jesus and a shrine to the Blessed Mother. Although the bequest does not specifically refer to Rosary Corporation, on October 5, 1988, Gregory M. Pomije, Executor of the Estate, distributed $84,675.88 to Rosary Corporation. The plaintiffs allege that the shrines have not been built and that Rosary Corporation cannot presently account for the proceeds of the bequest. The plaintiffs also allege that the defendants have assumed control of other personal property and money intended for the use and benefit of the members of Rosary Chapel, and that the defendants have failed to properly account for this property.

Because of a theological dispute with Marcel Lefebvre, the defendants were re-

---

1. The property currently has a structure on it and the plaintiffs allege that its value is approximately $250,000.00. The plaintiffs also allege that the other assets of Rosary Corporation have a value in excess of $50,000.00.

2. The Society and its priests have been "suppressed" by the Roman Catholic Church and are not members of that church.

moved from the Society. They later formed or joined the Society of Saint Pius V, which is not part of the Roman Catholic Church, and they continued to preside over worship services at Rosary Chapel. The plaintiffs allege that the defendants never explained the reasons for their expulsion from the Society or the mission of the Society of Saint Pius V.

The plaintiffs also allege that the defendants and other priests "became aloof, uncommunicative, haughty, imperious and unconcerned about the feelings, wishes, views and sentiments of the members of Our Lady of the Rosary Chapel." When the plaintiffs sought to resolve these problems, the defendants invited them to terminate their membership at Rosary Chapel. In addition, the defendants forbade one plaintiff from coming onto the property of Rosary Chapel. As a result of these problems, on June 7, 1989, most of the plaintiffs wrote a letter to Daniel B. Ahern, the Pastor of Rosary Chapel, and a member of the Society of Saint Pius V, and requested that the defendants terminate their services at Rosary Chapel and return control of the property to Rosary Chapel's members. Ahern refused to comply with the plaintiffs' request. On June 17, 1989, he responded with a letter stating that the "integrity and perpetuity of the corporate structure of Our Lady of the Rosary, Inc. has been successfully defended in the jurisdictional arenas of both the United States and the Commonwealth of Virginia."

## II. CONCLUSIONS OF LAW

### A.

■ The plaintiffs' complaint reveals that the members of Rosary Chapel formed TCT and subsequently Rosary Corporation because they had a doctrinal dispute with the Roman Catholic Church. As a result of this background, the Court must exercise caution in attempting to resolve this controversy as principles of religious freedom "prohibit the civil courts from resolving ecclesiastical disputes which depend upon inquiry into questions of faith and doctrine." *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107, 112, *cert. denied*, 474 U.S. 824, 106 S.Ct. 80, 88 L.Ed.2d 65 (1985). The constitution, however, does not prohibit the Court from resolving all disputes with religious roots "for there is no constitutional prohibition against the resolution of church property disputes by civil courts, provided that the decision does not depend on inquiry into questions of faith or doctrine." *Norfolk Presbytery v. Bollinger*, 214 Va. 500, 201 S.E.2d 752, 755 (1974). Therefore, the Court must determine whether resolution of this dispute will require an inquiry into church doctrine. The Court finds that, at its core, this case involves a dispute over property not doctrine.

The plaintiff's complaint asks the Court to exercise its equitable powers to require the defendants to hold their office as directors in trust for the benefit of the members of Rosary Chapel. The plaintiffs also seek an accounting of the bequest from Ms. Vitocolonna that was distributed to Rosary Corporation. Although the complaint reveals that the plaintiffs have some doctrinal differences with the defendants, the primary purpose and substance of the plaintiffs' complaint involves a dispute over property interests. If the Court was to grant the relief requested, the Court would only be using its equitable powers to order an accounting of property and to impose a constructive trust upon the defendants' property interests in their positions as directors of Rosary Corporation. Accordingly, the Court can decide this case "by reference to neutral principles of law, without reference to issues of faith and doctrine." *Reid*, 229 Va. 179, 327 S.E.2d at 112.

At the oral argument on this motion the counsel for the defendants admitted, and the Court agrees, that the only function Rosary Corporation serves is to hold legal title to the property of Rosary Chapel on McCosh Drive in Chesapeake. In effect, the corporation holds title to the property as trustee for the benefit of the members of Rosary Chapel. The Court must agree with this interpretation for any other view of Rosary Corporation's powers would render the corporation an unconstitutional establishment of religion by the Commonwealth of Virginia.

The General Assembly creates all corporations in Virginia. The Constitution of Virginia provides that "[t]he creation of corporations ... shall be provided for by the general law.... The police power of the Commonwealth to regulate the affairs of corporations ... shall never be abridged." Art. IX, § 6. The Constitution of Virginia also specifically proscribes the incorporation of any church by the General Assembly. Art. IV, § 14(20). Because the legislature, through the State Corporation Commission, grants or creates the corporate entity, a church cannot be such an entity. " 'No man at all acquainted with the course of legislation in Virginia, can doubt, for a moment, the decided hostility of the legislative power to religious incorporations.' " *Maguire v. Loyd,* 193 Va. 138, 67 S.E.2d 885, 892 (1951), *aff'd on rehearing,* 194 Va. 266, 72 S.E.2d 631 (1952) (quoting *Gallego's Ex'ors v. Attorney General,* 30 Va. 450 (1832)).

Because Rosary Corporation is merely the legal titleholder to the church property, the corporation must act for the benefit of Rosary Chapel and its members. Generally speaking, a church is a group of persons gathered together to worship a diety. Such a church body cannot be controlled by a legal entity created by the state, as such control would be unconstitutional. For these reasons, the Court is extremely troubled by the allegations in the plaintiff's complaint that the directors of Rosary Corporation have used their positions to control the religious affairs of Rosary Chapel. Such actions, if true, would exceed the powers of Rosary Corporation as legal titleholder and would be unconstitutional.

### B.

Although the Court has not been cited any case imposing a constructive trust on the office of a corporate director, it sees no reason why equity would not supply a remedy in an appropriate case. Directors have a fiduciary duty to act for the benefit of the corporation and as such they are the trustees of the stockholders. *See F.D.I.C. v. Sea Pines Co.,* 692 F.2d 973 (4th Cir.1982). Moreover, they are trustees not only for the stockholders, but also for those for whose benefit the corporation should, in fundamental fairness and justice, be acting—otherwise it constitutes fraud. *Id.* at 977. Constructive trusts are created by the law to prevent fraud or injustice. Such trusts are created independently of the intentions of the parties. *Leonard v. Counts,* 221 Va. 582, 272 S.E.2d 190, 195 (1980). Constructive trusts "may arise from a breach of a fiduciary duty as well as from actual fraud or unconscionable conduct...." *Greenspan v. Osheroff,* 232 Va. 388, 351 S.E.2d 28, 36 (1986). The plaintiffs' complaint alleges that the defendants have violated their fiduciary duty, fraudulently seized control of Rosary Chapel, and unjustly enriched themselves. These allegations, if true, would state a claim for imposition of a constructive trust.

### C.

The defendants also argue that the plaintiffs are not the proper plaintiffs to bring this action because they are not members or stockholders of Rosary Corporation. The Court, however, does not take such a narrow view of this equity case. The plaintiffs, as members of Rosary Chapel, seek to prove that Rosary Corporation was incorporated for their benefit and that they subsequently gave control of Rosary Corporation to the defendants who were to act for their benefit. Furthermore, some of the plaintiffs were instrumental in forming TCT, and two of the plaintiffs formerly constituted a majority of the board of directors of TCT. While it is true that Rosary Corporation has no shareholders, the facts allege that the defendants act for the benefit of the members of Rosary Chapel. Therefore, the plaintiffs, who are all members of Rosary Chapel, are the proper parties plaintiff in this case.

### D.

Having determined that the plaintiffs have stated a valid and justiciable claim, and that they are proper parties plaintiff, the Court is presented with the question of whether Rosary Corporation must be joined as an indispensable party and, if so, wheth-

er Rosary Corporation must be joined as a plaintiff or as a defendant.

■ The question of the necessity of joining Rosary Corporation in this litigation is governed by Rule 19 of the Federal Rules of Civil Procedure. Questions of joinder under Rule 19 in diversity cases are determined by federal law. *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 813 (4th Cir. 1982). The Court notes that the Rule 19 inquiry is a practical one that "is addressed to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir.1980).

Rule 19 requires the Court to make a two-part inquiry. The first part of the inquiry is governed by Rule 19(a), which reads as follows:

> (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Rule 19(a) provides three alternative means by which a party may be joined if feasible. The Court relies on the second alternative and finds that Rosary Corporation claims an interest in this litigation such that dispo-sition of the case in its absence would impair Rosary Corporation's ability to protect its interest. Rule 19(a)(2)(i). The nature of the relief sought by the plaintiffs' complaint compels this result.

Rosary Corporation does not have shareholders; total control of the corporation is vested in a group of three people who have the perpetual right to name themselves. The complaint asks the Court to require the current directors to elect successors chosen by a vote of the members of Rosary Chapel. Such a remedy would essentially give the members of Rosary Chapel the right to name the directors of Rosary Corporation, even though the articles do not give them the right to vote for directors. This would clearly contravene the articles of incorporation. The Court finds that the corporation must be a party to a case where the relief sought would alter the articles of incorporation and direct the duties of the directors. *See Tower Hill Connellsville Coke Co. v. Piedmont Coal Co.*, 33 F.2d 703, 706 (4th Cir.), *cert. denied*, 280 U.S. 607, 50 S.Ct. 157, 74 L.Ed. 650 (1929) (company and its directors are necessary and indispensable parties if the court's decree seeks in any way to direct or control the company's management).

The plaintiffs also seek an accounting of the funds distributed from the estate of Ms. Vitocolonna. The complaint alleges that these funds were distributed to Rosary Corporation, not to the defendants. Logic would suggest that if an accounting is sought of a bequest that was distributed to Rosary Corporation, then Rosary Corporation should be made a party. Rosary Corporation's absence from this litigation would impair its ability to protect its interest with regard to the accounting that the plaintiffs seek.

■ The determination that Rosary Corporation should be joined does not end the inquiry under Rule 19(a). The Court must also determine whether Rosary Corporation should be joined as a plaintiff or as a defendant. The Court has directed counsel for both parties to brief this specific issue and neither party has cited any case that will resolve the issue. The uniqueness of

this situation leads the Court to conclude that this question will best be resolved by analogizing to the disposition of a shareholder derivative suit.

In a derivative suit the corporation is initially named as a defendant. *Liddy v. Urbanek,* 707 F.2d 1222, 1224 (11th Cir. 1983). Once joined, "the corporation is then realigned, if necessary, according to its real interests." *Id.* In essence, the final alignment of the parties should reflect the actual antagonisms between the plaintiffs, the corporation and the directors. *Smith v. Sperling,* 354 U.S. 91, 96, 77 S.Ct. 1112, 1115, 1 L.Ed.2d 1205 (1957). "This is a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute." *Id.* at 97, 77 S.Ct. at 1116.

In each of the grounds for relief sought by the plaintiff, Rosary Corporation's interests are antagonistic to those of the plaintiffs. The plaintiffs seek the imposition of a constructive trust on the directors of Rosary Corporation that would result in an election of directors on terms contrary to those of Rosary Corporation's articles of incorporation. In addition, the request for an accounting alleges improper use of funds that were turned over directly to Rosary Corporation. The complaint also reveals the clear hostility between the directors or Rosary Corporation and the plaintiffs. In a situation where the directors are hostile to the plaintiffs, it follows that the corporation is properly made a defendant. *See, Swanson v. Traer,* 354 U.S. 114, 116, 77 S.Ct. 1116, 1118, 1 L.Ed.2d 1221 (1957). Furthermore, in derivative suits, the parties must be joined according to their antagonistic interests, even if such joinder destroys diversity jurisdiction. *See e.g., Liddy,* 707 F.2d at 1225; *Lewis v. Odell,* 503 F.2d 445 (2d Cir.1974). All of these factors lead the Court to conclude that Rosary Corporation should be joined as a defendant.

■ If Rosary Corporation is joined as a party defendant, diversity jurisdiction will be defeated and the Court will have to dismiss the case. Before the Court may join Rosary Corporation as a defendant, it must consider the four factors found in Rule 19(b) to determine whether the action should proceed without joining Rosary Corporation. Rule 19(b) reads as follows:

(b) *Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the Supreme Court outlined the analysis that the Court must follow under Rule 19(b).

The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situa-

tion to determine whether it can proceed without him.

*Id.* at 118–19, 88 S.Ct. at 743.

The first Rule 19(b) factor addresses the prejudice to Rosary Corporation that would result if it was not joined. The analysis here necessarily tracks the Court's prior analysis under Rule 19(a)(2)(i). Because the constructive trust sought by the plaintiffs would run contrary to Rosary Corporation's articles, a fundamental aspect of Rosary Corporation's existence will be altered, causing obvious prejudice. The plaintiffs' complaint also alleges that funds distributed directly to Rosary Corporation have not been accounted for. Rosary Corporation should have an opportunity to respond to these allegations.

With regard to the second factor, the Court knows of no way to shape relief to limit the prejudice to Rosary Corporation. If the action proceeds without Rosary Corporation, the corporation will be left without an opportunity to defend the integrity of its corporate charter or to account for the funds distributed from the estate of Ms. Vitocolonna.

The Supreme Court has described the interest at stake in the third factor as being "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens*, 390 U.S. at 111, 88 S.Ct. at 739. Allowing this case to proceed without Rosary Corporation will not lead to the most complete and efficient resolution of the controversy. Rosary Corporation has already been the subject of litigation in the Circuit Court of the City of Chesapeake. *See Barnum v. Our Lady of the Rosary, Inc.*, Chancery No. 20971. If the plaintiffs do not attain the relief they desire in this action and Rosary Corporation is not made a party, they may attempt to seek similar relief against Rosary Corporation in state court.

The Court finds the fourth factor to be the most important in this case. Rosary Corporation is a Virginia corporation and all of the defendants would be subject to service of process in Virginia state court. In addition, any equitable remedy available to this Court would also be available in state court. Therefore, the plaintiffs clearly have an adequate remedy in state court against both the defendants and Rosary Corporation. This factor is especially persuasive in this situation since the case has not yet proceeded beyond the pretrial stage. *See Provident Tradesmens*, 390 U.S. at 109, 88 S.Ct. at 738.

Finally, one other factor not found in Rule 19(b) favors joining Rosary Corporation. Continuing the analogy to the shareholder derivative suit, the Court notes that in such actions the corporation is always deemed to be an indispensable party. *E.g.*, *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970); *Meyer v. Flemming*, 327 U.S. 161, 167, 66 S.Ct. 382, 386, 90 L.Ed. 595 (1946); *Liddy*, 707 F.2d at 1224. After examining all of these factors in the context of the allegations in the complaint, the Court concludes that it cannot allow the plaintiffs to proceed without joining Rosary Corporation as an indispensable party defendant.

The plaintiffs have cited three cases in support of their position that Rosary Corporation is not an indispensable party. The Court is not persuaded by these cases. In *Street v. Vitti*, 685 F.Supp. 379 (S.D.N.Y. 1988), the court held that the corporation was not an indispensable party because it did not have an interest in who controlled its board of directors. The present case is markedly different from *Street*. The dispute in *Street* involved a closely held corporation. All four outstanding shareholders of the corporation were parties to the lawsuit. Because they were stockholders, all of the plaintiffs, as opposed to the plaintiffs in this case, had some say over who the corporation's directors would be. Furthermore, the plaintiffs in *Street* did not seek relief that would alter the articles of incorporation. In *United States v. Goodman*, 287 F.2d 871 (5th Cir.1961), the court held that a corporation was not an indispensable party in a tort action against the corporation's president for conversion of government drafts. *Goodman* has no relation to the present case as the court based its holding on the fact that the president

and the corporation were jointly and severally liable so that either of them could be sued separately. Finally, the plaintiffs rely on *Gertner v. Hospital Affiliates Int'l., Inc.*, 602 F.2d 685 (5th Cir.1979), which involved a suit for a constructive trust on the assets of a subsidiary corporation as a result of a breach of an oral contract involving the property of the subsidiary. The court held that the subsidiary was not an indispensable party because the remedy could be obtained by imposing a constructive trust on the subsidiary's stock without joining the subsidiary. In the present case, however, the plaintiffs seek to do more than just obtain an interest in property. Rather, the relief requested would require the Court in effect to alter the articles of incorporation of Rosary Corporation by changing the method of election of directors as well as require an accounting by Rosary Corporation.

### III. CONCLUSION

Although the plaintiffs have stated a justiciable claim upon which relief can be granted in equity, the Court finds that this case must be dismissed for lack of jurisdiction since joining the indispensable party robs the Court of jurisdiction. For the reasons stated above, the Court finds that this action cannot proceed without joining Rosary Corporation as an indispensable party defendant. Accordingly, the defendants' Rule 12(b) motion is GRANTED and the case is ORDERED DISMISSED without prejudice.

IT IS SO ORDERED.