## Richmond

THE NORFOLK PRESBYTERY v. JERRY L. BOLLINGER, LAWRENCE E. KEENER AND CHARLES A. WORNOM, TRUSTEES OF GRACE COVENANT PRESBYTERIAN CHURCH.

January 14, 1974.

Record No. 8241.

Present, All the Justices.

*Peter W. Rowe; Robert C. Stackhouse (Stackhouse, Weinberg & Stewart,* on brief), for appellant.

*Owen H. Page [Ga.]; William McL. Ferguson (Shannon T. Mason, Jr.; Ferguson & Mason,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the court.

The congregation of Grace Covenant Presbyterian Church in Hampton, on July 23, 1972, voted to sever its connection with The Norfolk Presbytery and The Presbyterian Church in the United States and to become an independent and autonomous church. On September 22, 1972, the Trustees of Grace Covenant, pursuant to a resolution unanimously approved at another congregational meeting, filed their petition in the trial court praying that they be permitted to convey the real estate which they held for the church, comprising the property used for a church and elementary school and parsonage property, to The Mary Atkins Christian Day School, a Virginia corporation. By order entered the same day in the *ex parte* proceeding the trial court, after reciting that the evidence showed that the transfer of property was "the wish of the congregation" and that the congregation was "the governing body of said church", directed the Trustees to effectuate the property transfer.

Within 21 days after entry of this order Norfolk Presbytery filed its motion to set aside the order as contrary to the law and the evidence and as improvidently granted. In the alternative the Presbytery moved for leave to file its petition as an intervenor and to stay the order pending decision on this motion.

The motion for leave to intervene alleged that Grace Covenant was a duly constituted church of and subject to the jurisdiction, government and discipline of The Presbyterian Church in the United States, a supercongregational body. The motion further alleged that the action of the congregation in undertaking unilaterally to withdraw, with its property, from the parent church was contrary to ecclesiastical law; that Norfolk Presbytery was the first ecclesiastical court having direct jurisdiction over Grace Covenant; that the Presbytery had a proprietary interest, as well as a jurisdictional and pastoral interest, in Grace Covenant and its property, which would be denied without due process of law if the order of September 22, 1972, became final; and that the order was "or may be, an unwarranted interference of the State with the Church, in violation of both the State and Federal Constitutions." The motion also stated that the Presbytery did not know of the pendency of the *ex parte* proceeding until after the order had been entered.

The trial court heard arguments on the motions of Norfolk Presbytery and concluded that the order of September 22, 1972, complied

with the requirements of the applicable statute[1] governing transfers of church property and that to grant the motions would necessarily involve the civil court in an impermissible determination of ecclesiastical law. From the order entered November 13, 1972, overruling its motions we granted the Presbytery an appeal.

We construe Code § 57-15 to require that a church property transfer may be ordered only upon a showing that this is the wish of the duly constituted church authorities having jurisdiction in the premises. Under predecessor statutes only the congregation's wishes were to be considered in a proceeding to authorize a church property conveyance,[2] but Code § 57-15 now contemplates that the general church, or a division thereof, or certain ecclesiastical officials may be the proper parties to approve such a property transfer. In determining the proper party to approve the property transfer, the trial court must look to the organizational structure of the church. *See* Code § 57-9, which recognizes a distinction between an autonomous congregation and one which is part of a supercongregational or hierarchical denomination in providing for the determination of property rights upon a division of a church or congregation. *Baber* v. *Caldwell*, 207 Va. 694,

---

[1] Norfolk Presbytery argued that the conveyance was contrary to the provisions of Code § 57-15. The trial court ruled, however, that the conveyance was authorized by § 57-15 which provides in pertinent part:

"The trustees of such church diocese, congregation, or church or religious denomination, or society or branch or division thereof, in whom is vested the legal title to such land held for any of the purposes mentioned in § 57-7, may file their petition in the circuit court of the county or the circuit or corporation court of the city wherein the land, or the greater part thereof held by them as trustees, lies, or before the judge of such court in vacation, asking leave to sell, encumber, extend encumbrances, improve, or exchange the land, or a part thereof; and upon evidence being produced before the court, or the judge thereof in vacation, that it is the wish of the congregation, or church or religious denomination or society, or branch or division thereof, or the constituted authorities thereof having jurisdiction in the premises, or of the governing body of any church diocese, to sell, exchange, encumber, extend encumbrances, or improve the property, the court, or the judge thereof in vacation, shall make such order as may be proper, providing for the sale of such land, or a part thereof, or that the same may be exchanged, encumbered, improved, or that encumbrances thereon be extended, and in case of sale for the proper investment of the proceeds. . . ."

[2] The predecessor statute, Code of 1887 (Annotated) § 1406, required only congregational approval as a prerequisite to court sanction of a church property conveyance. The statute, Code of 1904 (Annotated) § 1406, incorporated the amendment by Acts 1904, c. 209, to require evidence that the proposed conveyance is "the wish of said congregation, or church or religious denomination or society, or branch or division thereof," to which the words "or the constituted authorities thereof having jurisdiction in the premises" were added by Acts 1924, c. 372. Subsequently, by Acts 1962, c. 516, the language relating to a church diocese was added to this section, to § 57-7 and to other related sections.

698, 152 S.E.2d 23, 26 (1967). In the case of a supercongregational church, we hold that Code § 57-15 requires a showing that the property conveyance is the wish of the constituted authorities of the general church.

In view of our construction of Code § 57-15, we hold that the trial court erred in denying the Presbytery's motion to intervene. If the Presbytery does have a proprietary interest in the Grace Covenant property, the court's approval of the conveyance sought by the Trustees would unlawfully deprive the Presbytery of this property interest. Accordingly, the Presbytery was entitled to present whatever evidence it had tending to establish its interest in the Grace Covenant property. If, upon remand, the Presbytery does establish such a proprietary interest, it will be entitled to a permanent injunction against the conveyance by the Trustees to the Day School. If, however, the Presbytery is unable to establish a proprietary interest in the property, it will have no standing to object to the property transfer. *See Brown* v. *Virginia Advent Christian Conference*, 194 Va. 909, 76 S.E.2d 240 (1953).

■ Each party contends, however, that regardless of statutory provisions, it must prevail under the constitutional principle of separation of church and state. The Trustees contend that judicial review of the congregation's decision to become autonomous would abridge the congregation's right to free exercise of religion and would establish the Presbytery as a state supported church. The Presbytery asserts that a ruling in favor of Grace Covenant would be an impermissible establishment of the local church and a prohibited interference in the ecclesiastical law of the general church. We reject both of these contentions, for there is no constitutional prohibition against the resolution of church property disputes by civil courts, provided that the decision does not depend on inquiry into questions of faith or doctrine. *Maryland and Virginia Eldership of the Churches of God* v. *Church of God at Sharpsburg, Inc.*, 396 U.S. 367 (1970); *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969); *Carr* v. *Union Church of Hopewell*, 186 Va. 411, 42 S.E.2d 840 (1947).

Where a church is hierarchical, a majority of courts have held that, absent express limitations in the deed, church property is held subject to an implied trust for the general church. *Watson* v. *Jones*, 80 U.S. (13 Wall.) 679 (1871); *Presbytery of the Everglades* v. *Morgan*, 125 So.2d 762, 765 (Fla. Dist. Ct. App. 1961); Note, 54 Va.

L. Rev. 1451 (1968). *See* Annot., 52 A.L.R.3d 324 (1973). In *Watson* v. *Jones, supra,* it was held that those who unite themselves with a hierarchical church do so with an implied consent to its government and take title to local church property subject to an implied trust for the general church. The decision of the tribunal established by the general church to resolve ecclesiastical disputes was held to be binding on local congregations and on civil courts. We are not bound by the rule of *Watson* v. *Jones, supra,* however, for that case rested on federal law. Moreover, it did not hold that the implied trust doctrine was the only constitutional rule for resolving church property disputes.

The Trustees of Grace Covenant argue that the implied trust rule of *Watson* v. *Jones, supra,* was held unconstitutional by *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra.* The latter case arose out of a dispute over church property of two local churches in Georgia that withdrew from The Presbyterian Church in the United States. Under Georgia law church property of a local congregation of a hierarchical church was held under an implied trust for the general church so long as the general church did not depart from doctrine in force when the local churches became affiliated. A jury trial was held, the jury found that there had in fact been a departure from doctrine, and judgment was entered in favor of the local churches. The Supreme Court reversed and remanded, holding that it was constitutionally impermissible under the First Amendment to require a civil court to determine whether there had been a substantial departure from the tenets of faith and practice. The court noted with approval the similar result reached in *Watson* v. *Jones, supra,* where the court refused to decree the termination of an implied trust because of departure from doctrine of the general church.

Thus, in *Hull,* the Supreme Court acknowledged that civil courts may properly adjudicate disputes over church property. The First Amendment requires only that such disputes be adjudicated according to "neutral principles of law, developed for use in all property disputes", and which do not involve inquiry into religious faith or doctrine. 393 U.S. at 449.

Upon remand of *Hull sub nom. Presbyterian Church in United States* v. *Eastern Heights Presbyterian Church,* 225 Ga. 259, 167 S.E.2d 658 (1969), *cert. denied,* 396 U.S. 1041 (1970), the Georgia Supreme Court held that the implied trust rule in favor of the general

church must fall because of the invalidation of the departure-from-doctrine provision which was an integral part of the rule. Without the rule the court held that there was no trust for the general church, as no trust was created by the deeds, implied by statute or required by the constitution of the general church. Therefore, the local churches retained the church property in controversy. *Cf. Presbytery of Seattle, Inc.* v. *Rohrbaugh,* 79 Wash.2d 367, 485 P.2d 615 (1971), *cert. denied,* 405 U.S. 996 (1972), *reh. denied,* 406 U.S. 939 (1972), where no appeal was taken by the local congregation from an adverse ruling by the· Presbytery and this ruling was upheld by the civil court which found that trustees held pursuant to a trust defined by the general church constitution.

We do not construe *Hull* as requiring that courts apply neutral principles of law by considering only the record title to church property. In *Maryland and Virginia Eldership of the Churches of God* v. *Church of God at Sharpsburg, Inc.,* 396 U.S. 367 (1970), the court dismissed the appeal of a Maryland decision which held that in the light of *Hull* the court had not erred in a previous decision that awarded church property to local churches after considering (1) the Maryland statutes, (2) the express language in the deeds, (3) the charters of the local church corporations, and (4) the constitution of the general church with which the local churches were affiliated.

We hold that it is proper to resolve a dispute over church property by considering the statutes of Virginia, the express language in the deeds and the provisions of the constitution of the general church.

Virginia has never adopted the implied trust doctrine to resolve church property disputes. The Constitutions of Virginia reflect the determination of our citizens from early days to maintain the separation of state and church and to prevent the establishment of any religion. *See, e.g.,* Constitution (1830) Art. III, 11; Constitution (1902) Art. I, § 16; Constitution (1971) Art. I, § 16. Moreover, the General Assembly is prohibited from incorporating any church or religious denomination but "may secure the title to church property to an extent to be limited by law." Constitution (1902) Art. IV, § 59; Constitution (1971) Art. IV, § 14.

By decisions for many years we have held that a trust for indefinite beneficiaries, if the named trustee is an individual or unincorporated body, is invalid unless expressly validated by statute. *See Gallego's Ex'rs.* v. *Attorney General,* 3 Leigh (30 Va.) 450, 24 Am. Dec. 650 (1832); *Fifield* v. *Van Wyck,* 94 Va. 557, 27 S.E. 446 (1897); *Moore* v. *Perkins,* 169 Va. 175, 192 S.E. 806 (1937).

Code § 57-7[3] validates conveyances, devises and dedications of land for specified religious purposes. We have construed the words "church", "religious congregation", or "religious society", as used in the statute, to mean the local congregation rather than a larger hierarchical body. *Moore* v. *Perkins, supra; Brooke* v. *Shacklett,* 54 Va. (13 Gratt.) 301 (1856). *See Maguire* v. *Loyd,* 193 Va. 138, 67 S.E.2d 885 (1951); Note *"Charitable Trusts for Religious Purposes in Virginia"*, 39 Va. L. Rev. 121 (1953).

The 1962 amendment to § 57-7, Acts 1962, c. 516, broadened the scope of religious trusts to include property conveyed or devised for the use or benefit of a church diocese for certain residential purposes. The General Assembly has not gone beyond this, however, to validate trusts for a general hierarchical church and such trusts would be

---

[3] **"Code § 57-7. What transfers for religious purposes valid.**—Every conveyance, devise, or dedication shall be valid which, since the first day of January, seventeen hundred and seventy-seven, has been made, and every conveyance shall be valid which hereafter shall be made of land for the use or benefit of any religious congregation as a place for public worship, or as a burial place, or a residence for a minister, or for the use or benefit of any church diocese, church, or religious society, as a residence for a bishop or other minister or clergyman who, though not in special charge of a congregation, is yet an officer of such church diocese, church or religious society, and employed under its authority and about its business; and every conveyance shall be valid which may hereafter be made, or has heretofore been made, of land as a location for a parish house or house for the meeting of societies or committees of the church or others for the transaction of business connected with the church or of land as a place of residence for the sexton of a church, provided such land lies adjacent to or near by the lot or land on which is situated the church to which it is designed to be appurtenant; or for use in furtherance of the affairs of any church diocese, and the land shall be held for such uses or benefit and for such purposes, and not otherwise. And no gift, grant, or bequest hereafter made to such church diocese, church or religious congregation, or the trustees thereof, shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such gift, grant, or bequest in any case where lawful trustees of such church diocese, church or congregation are in existence, or the church diocese, or the congregation is capable of securing the appointment of such trustees upon application as prescribed in the following section (§ 57-8); but such gift, grant, or bequest shall be valid, subject to the limitation of § 57-12; provided, that whenever the objects of any such trust shall be undefined or so uncertain as not to admit of specific enforcement by the chancery courts of the Commonwealth, then such gift, grant, or bequest shall inure and pass to the trustees of the beneficiary church diocese or congregation, to be by them held, managed, and the principal or income appropriated for the religious and benevolent uses of the church diocese or congregation, as such trustees may determine, by and with the approval of the vestry, board of deacons, board of stewards, or other authorities which, under the rules or usages of such church diocese, church or congregation, have charge of the administration of the temporalities thereof.

"Provided that any devise of property after January one, nineteen hundred fifty-three, for the use or benefit of any religious congregation, wherein no specific use or purpose is specified shall be valid."

invalid. *Hoskinson* v. *Pusey*, 73 Va. (32 Gratt.) 428, 431 (1879); *Brooke* v. *Shacklett, supra* at 312-13. Indeed, the provisions of Code § 57-12, limiting the amount of land which may lawfully be held by church trustees, evidence this restrictive legislative intent. *See Moore* v. *Perkins, supra,* 169 Va. at 181, 192 S.E. at 809.

As express trusts for supercongregational churches are invalid under Virginia law no implied trusts for such denominations may be upheld. But this does not mean that our civil courts are powerless to prevent a hierarchical church from being deprived of contractual rights in church property held by trustees of a local congregation.

Norfolk Presbytery made sufficient allegations to be entitled to file its petition as an intervenor in order to have a determination made whether it had a proprietary interest in the property of Grace Covenant which could not be eliminated by unilateral action of the congregation. To this end the language of the deeds and the constitution of the general church should be considered by the trial court in the application of neutral principles of law. As Norfolk Presbytery cannot rely on the implied trust theory, because of our statutes, it has the burden of proving that the Trustees of Grace Covenant have violated either the express language of the deeds or a contractual obligation to the general church.

For the reasons assigned the order of the trial court will be reversed and the case remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*