## CIRCUIT COURT OF AMHERST COUNTY

The Diocese of Southwestern Virginia
of the Protestant Episcopal Church
in the United States of America,
Benjamin D. Smith
and S. Cabell Burks,
Wardens of Ascension
Episcopal Church,
Amherst, Virginia,
on behalf of said Church,
and William Hudson
and W. R. Cash,
Wardens of St. Mark's
Episcopal Church,
Clifford, Virginia,
on behalf of said Church

    v.

J. B. Wyckoff,
William E. Sandidge,
William N. Mays,
John A. Pedlar,
Edgar J. T. Perrow,
and Walter T. Bain

November 16, 1979

By Judge Lawrence L. Koontz, Jr.

    This cause is before the Court on a chancery bill filed on September 14, 1978, by the Diocese of Southwestern Virginia of the Protestant Episcopal

Church in the United States of America and various officers and members of the congregation of Ascension Episcopal Church, Amherst, Virginia, and St. Mark's Episcopal Church, Clifford, Virginia, seeking determination of title of certain real and personal church property currently held by the primary respondents who are the trustees of these churches. Respondents by answer filed on October 6, 1978, and amended answer and cross-bill filed June 7, 1979, deny the allegations of the bill and, in the affirmative, allege on behalf of a newly formed Anglican Catholic Church that they are the true beneficiaries of the property in dispute. In the interim, a demurrer, a second demurrer, and amended second demurrer were filed and, after hearing, were overruled. On October 10, 1978, the newly formed Diocese of the Mid-Atlantic States of the Anglican Catholic Church filed a motion to intervene and later an amended motion to intervene on December 13, 1978, which were subsequently denied on February 28, 1979. A motion to dismiss one of the complainants was filed on March 20, 1979, which was denied on May 31, 1979.

The cause was finally matured for hearing, and evidence was taken *ore tenus* on August 7, 8, 9, 1979, and September 25, 1979. Briefs by all parties have now been filed and considered by the Court.

The following facts have been determined by the Court. The real property in question was conveyed by deeds dated respectively in 1847 and 1860 and properly recorded in the Clerk's office of the Circuit Court of Amherst County. By the 1847 deed Elijah Fletcher *et ux.* conveyed to Henry S. Davies *et al.* "1 rood and 4½ [ *blank* ] more or less," in said deed more particularly described, "on which preparations are now being made to erect a new brick church for the use and benefit of the Protestant Episcopal Church," the conveyance being "upon this special trust and this special confidence, however, that they the said [grantees] and the survivor of them and the heirs and assigns of them and the survivor of them shall and will forever have and hold the said piece or parcel of land with all the improvements and appurtenances thereunto belonging for the use and benefit of the Protestant Episcopal Church as they the said [grantees] and the survivor of them and the heirs and assigns of them and the survivor of them shall deem most likely to promote the interest of the said church. . . ." By the 1860 deed, Sidney Fletcher, Executor of E. Fletcher, deceased, conveyed unto Henry S. Davies *et al.* a "parcel of land adjoining the Episcopal Church lot at Amherst Court House, containing about 1/4 of an acre" and described by reference to a prior deed, "To have and to hold the said lot or piece of land to the only use of the parties of the second part for the same use and for the same purposes and upon the same conditions and upon the same trusts as are more particularly set out and contained in a deed from Elijah Fletcher to the said parties of the second part as are set out and contained in this deed to them dated the [ *blank* ] day of [ *blank* ] 1847, and recorded in the Clerk's office of Amherst County Court. . . ." In time, the

church was completed on this property and was continuously used by the congregation for Protestant Episcopal Church services for over one hundred years. Geographic boundary and name changes have occurred over these years in the Diocese, however, the congregation of Ascension Episcopal Church, Amherst, has remained loyal to the Ecclesiastical Authority and the constitution and commons of the now Diocese of Southwestern Virginia of the Protestant Episcopal Church (hereinafter Diocese of Southwestern Virginia), one of the complainants in this case. In May of 1978, the local rector prompted by his genuine and sincere theological differences with the national Episcopal Church advised the congregation of his intentions to join the newly forming Anglican Catholic Church. Subsequently, after notice to the members of the congregation, a meeting of the congregation was called to vote on the resolution of the vestry, which is the governing body of the local church. This resolution called for the congregation to renounce allegiance to the Diocese of Southwestern Virginia and to become a part of the Diocese of Mid-Atlantic States of the Anglican Catholic Church. This meeting resulted in a vote of 59 to 44 in favor of affiliation with the Anglican Catholic Church. The meeting was conducted pursuant to the requirements of Canon 14 of the Diocese of Southwestern Virginia, which provides for the election of vestry members. Among those present and voting were some that were under eighteen years of age. Virginia Code § 57-9 was not specifically relied upon in conducting the vote. At the time of this meeting, there were a minimum of 150 communicants in the congregation.

The parties have agreed and stipulated that the title to personal property in question, which includes various items of tangible property and certain funds on deposit in checking and savings accounts in two local banks, shall be determined and controlled in accordance with a determination of title to the real property in question. It is further stipulated that St. Mark's Complainants are entitled to 25% of the rectory fund in question. Finally, it is stipulated that the Protestant Episcopal Church is a supercongregational or hierarchical church.

This Court is required based on these facts to determine the title to the real property in question immediately prior to the congregational vote in May of 1978 and, thereafter, the effect of that vote on the title.

It is well settled under the law of this Commonwealth that trusts created by language in deeds purporting to convey property to named individual trustees for indefinite beneficiaries are invalid. Furthermore, such trusts expressed or implied for general hierarchical churches are invalid. *Norfolk Presbytery v. Grace Covenant Church*, 214 Va. 500 (1974). Our Virginia Supreme Court in the 1856 case of *Brooks v. Shacklett*, 54 Va. (13 Gratt.) 301 (1856), established that language in deeds such as these in question create a conveyance of the property for the use of the local congregation. It is abundantly clear, therefore, that title to the property in question immediately prior to the May 1978 congregational vote of the

Ascension Episcopal Church, Amherst, was in the duly appointed trustees for the benefit of that congregation. The whole thrust of the respondents' evidence in this case does not seriously contest this beneficial use in the local congregation but rests rather on other grounds to be addressed later.

The determination of the effect of the May 1978 congregational vote then remains to be resolved. It is obvious and uncontested that members of the congregation had the right to withdraw from the Episcopal Church and to transfer their allegiance to any other church. It is also obvious that, in so doing, even a majority could not thereby require the minority to transfer their allegiance or be put out of existence as a church entity. Logic and common sense then dictate that the vote in question resulted in a divided congregation some of whom remained loyal to and constituted the Ascension Episcopal Church, Amherst. The remaining group became aligned with the Anglican Catholic Church. The result, nevertheless, is that the Protestant congregation of Ascension Episcopal Church, Amherst, while perhaps reduced in number still existed as it had prior to the vote. The trustees are required to hold the property, in question for the benefit of one local congregation and not more than one. It is for this reason that the respondents argue that this Court is without jurisdiction because to decide which congregation would necessarily involve a civil court in a decision of religious doctrine, which is prohibited by state and federal constitutions providing for a separation of church and state. In the alternative, they argue that the Anglican Catholic Church is the true Episcopal Church as it existed at the time of the 1847 and 1860 deeds.

It is well settled in the *Norfolk Presbytery v. Grace Covenant Church* case, *supra*, "that it is proper to resolve a dispute over church property by considering the statutes of Virginia, the express language in the deeds, and the provisions of the constitution of the general church." Civil courts are limited to the application of neutral principles of law in this consideration and are prohibited from using religious doctrine and practices as a basis for resolving church property disputes. The recent case of *Jones v. Wolf*, 443 U.S. 595 (1979), decided by the U.S. Supreme Court in July of 1979, does not change but rather affirms this approach as one valid means of resolving church property disputes. Under this decision, states which undoubtedly have a legitimate interest in settling property disputes are free to use several approaches to these disputes under applicable state law so long as they meet federal constitutional muster. Using this neutral principles dictate, this Court has found no provision of the constitution or canons of the general church or the diocese which permit a vote of even the majority of the local congregation to alienate the real property of the church without the written consent of the Bishop acting with the advice and consent of the Standing Committee of the Diocese. In fact, Canon 21 expressly prohibits such alienation. Furthermore, Canon 14 was used as a guideline, and this canon, by its express language, concerns the election of vestry members and is in

no way concerned with the alienation of church property and, consequently, could not have accomplished such a result.

Virginia Code § 57-9 provides for a method to determine title to and control of any church property held for a congregation attached to a hierarchical church, such as the Protestant Episcopal Church, when a division has occurred in such a church. This section expressly provides that the communicants, pewholders, and pewowners of such congregation *over eighteen year of age* may, by a vote of *a majority of the whole number* determine to which branch of the church such congregation shall belong and, if that determination is approved by the appropriate circuit court, it shall be conclusive as to the title and control of the church property. It would not be required that this statute be expressly relied upon at the congregational meeting in May 1978 if it, in fact, were applicable to and complied with in this case. This statute may well not be applicable for the constitutional infirmatives of applying it to the deeds in question which predate the passage of the statute. Such a determination need not be reached here. The facts show that the statute was not followed by allowing those under eighteen years of age to vote and, furthermore, a majority of the whole number of the congregation would have required at least seventy-six affirmative votes rather than the fifty-nine actually voting in favor of transferring allegiance. While this Court was not satisfied a division had occurred as contemplated by this statute, such a determination was not necessary for the foregoing reasons. The net result, therefore, based on the constitution and canons of the church and the state statutes is that the effect of the congregational vote in May 1978 on the title to the real property in question was that title remained exactly where it was prior to the vote, that is, in the trustees for the benefit of the local Protestant Episcopal congregation.

The respondents then claim that those who have transferred allegiance to the Anglican Catholic Church are in fact the local episcopal congregation as contemplated by the language of the two deeds in question and urge this Court on the basis of religious doctrine and principles to so hold. This Court has not questioned the sincerity and deep religious convictions and beliefs of the parties represented before it in this case nor has it sat in judgment of those religious convictions and beliefs. The complainants and, in deed, the respondents have ably argued and it is clearly and properly the law that neither this nor any other civil court can decide church property disputes based on religious doctrine and principles however sincerely they may be followed by the litigants. Based on neutral principles of law, however, this dispute can and must be decided. The result of the May 1978 congregational vote did not and could not extinguish that part of the Protestant Episcopal congregation known as Ascension Episcopal Church, Amherst, remaining loyal to the Diocese of Southwestern Virginia and the National Episcopal Church. The vote may well have indicated that fifty-nine members of that congregation transferred their allegiance to the Anglican Catholic Church,

which is unquestionably a separate entity. Nothing, however, has occurred under neutral principles of law to transfer the title and control of the property in question from the beneficial use of the remaining congregation of the Ascension Episcopal Church, Amherst, as represented by the complainants herein.

For these reasons, the primary prayer of the complainants will be granted, and the present trustees will be directed and required to hold the property in question for the sole use and benefit of the congregation of Ascension Episcopal Church, Amherst, as a unit of the Episcopal Church subject to the canonical authority of the Diocese of Southwestern Virginia. Respondent Pedlar and respondent former officers will be enjoined from further use and occupancy of the property. The personal property will be held accordingly with twenty-five percent of the rectory fund being held for St. Mark's Episcopal Church in accordance with the stipulation of the parties.