# CIRCUIT COURT OF THE CITY OF WINCHESTER

Thomas H. Krebs et al.

v.

John R. Keating et al.

May 6, 1997

Case No. (Chancery) 97-118

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on May 5, 1997, on the Defendants' Demurrer and Plea of Jurisdiction to the Plaintiffs' Bill of Complaint for an injunction. The Plaintiffs are parishioners of a Catholic Church who have been barred by their Priest and Bishop from the church property and who have sued the Priest and the Bishop seeking to obtain access to the church property to attend worship services. The Plaintiffs appeared with their attorney, Peter W. Buchbauer, Esquire, and the Defendants appeared by their attorney, Thomas V. Monahan, Esquire. Whereupon argument was heard, and upon consideration of that argument, the Court has decided to sustain the Defendants' Demurrer and Plea of Jurisdiction for the following reasons.

## I. *Statement of Material Facts*

The following material facts have been pleaded by the Plaintiffs.

The Plaintiffs are baptized Roman Catholics residing in the City of Winchester and are registered members of the local Catholic Church. The Defendant Keating is the Bishop of the Roman Catholic Diocese of Arlington, and he has authority and control over the churches and Roman Catholics within his jurisdiction as a part of a hierarchial church. Bill of Complaint, paragraph 3.

Defendant Spychala is the pastor of the local Catholic Church and was duly appointed by the Defendant Bishop Keating. "All authority which he has

comes exclusively from the Bishop of Arlington (Keating), and as such, he is an agent of the Bishop." Bill of Complaint, paragraph 4.

On or about January 28, 1997, the Defendant Priest, with the approval of the Bishop, had a letter containing a no trespass notice sent to the Plaintiffs barring them from the parish properties for worship or other reasons, because of the plaintiffs' activities on the church property, which the letter said included "disruption of church services, failure to follow procedures adopted for other parishioners, interference with the worship of other parishioners, confiscation of church literature ... believed by you to be inappropriate ... and efforts to subvert and undermine the church teachings ...."

The Plaintiffs claim that as baptized Roman Catholics they are "under obligation to attend Holy Mass on Sundays and other Holy Days and are further encouraged to participate in other worship and sacraments as they strive for personal holiness." Bill of Complaint, paragraph 6.

The Plaintiffs further aver that the letter barring them from the Church "interfere[s] with the practice of their religion." Bill of Complaint, paragraph 8. Plaintiffs further aver "that as baptized Roman Catholics and registered members of the Church ... they may not be prohibited from attending services unless they are the subject of a proper ecclesiastical decree. Short of such a decree, Plaintiffs have an absolute right protected by the Constitutions of the United States and Commonwealth of Virginia to worship at the church of their choice conveniently located to their home ...." Bill of Complaint, paragraph 10.

Although not as convenient to them as the Winchester Catholic Church, there are other churches in the Arlington Diocese which the parishioners may attend. Bill of Complaint, paragraph 8.

The Defendants have demurred and filed a Plea of Jurisdiction asserting that the issue involved is one which must be decided by the Church "according to Canon Law as the Bill itself acknowledges." (See last sentence of paragraph 3 and first sentence of paragraph 9 of the Bill of Complaint.)

## II. *Conclusions of Law*

In considering a demurrer the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). In all cases except negligence cases, in ruling on a demurrer, "the court is not bound by ... conclusory [legal] allegations when the issue involves ... a mixed question of

law and fact." *Russo v. White, supra*, at 28. The Supreme Court recently reviewed the principles governing the trial court's ruling on a demurrer in *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993), in which it stated:

> "A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988). "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991).

Having examined the bill of complaint, which is a claim against the defendants for interfering with the plaintiffs' constitutional right to practice their religion at the church of their choice, which they claim violates the tenets of the Roman Catholic Church, and drawing "all reasonable inferences fairly and justly drawn from the facts alleged ... in aid of the pleadings," it would appear that the demurrer should be sustained.

Bishop Keating is empowered by law to "hold" the church property "in accordance with such laws, rules and ecclesiastic policy, and in accordance with the laws of Virginia." Virginia Code § 57-16(1). The Plaintiffs do not dispute the fact that the Bishop generally has control over the church property or that he has the authority to take the action taken in this case to bar non-Catholics from the property, but rather they claim that under the canon law of the Roman Catholic Church, he may not take this action against a parishioner, like them, who is in good standing and who has not been interdicted or excommunicated by the church.

In *Reid v. Gohlson*, 229 Va. 179, 187-189, 327 S.E.2d 107 (1985), where there was a schism in a congregation church which had no written constitution, the Supreme Court undertook an extensive review of the constitutional guarantee of religious freedom and the extent to which a secular court may intrude into ecclesiastical matters and stated:

> The constitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed. These principles prohibit the civil courts from resolving ecclesiastical disputes which depend upon

inquiry into questions of faith or doctrine. *Presbyterian Church v. Hull Church*, 393 U.S. 440 (1969). The courts have, however, frequently been called upon to resolve disputes concerning the civil and property rights of religious bodies and church members. In such cases, there is a danger that the power of the state may be called upon to aid a faction espousing a particular doctrinal belief, or to "become entangled in essentially religious controversies." *Serbian Eastern Orthodox Diocese, etc. v. Milivojevich*, 426 U.S. 696, 709 (1976). For this reason, "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes." *Presbyterian Church v. Hull Church*, 393 U.S. at 449.

The threshold inquiry for a court asked to resolve such a dispute must be whether its resolution will project the fact-finder into what the Supreme Court, in *Serbian Eastern Orthodox Diocese*, aptly called a "religious thicket." 426 U.S. at 719. But where church property and civil rights disputes can be decided without reference to questions of faith and doctrine, there is no constitutional prohibition against their resolution by the civil courts. *Jones v. Wolf*, 443 U.S. 595 (1979); *Maryland & Va. Churches v. Sharpsburg Church*, 396 U.S. 367 (1970); *Presbyterian Church v. Hull Church, supra; Presbytery v. Grace Covenant Church*, 214 Va. 500, 201 S.E.2d 752 (1974); *Carr v. Union Church of Hopewell*, 186 Va. 411, 42 S.E.2d 840 (1947). "Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Presbyterian Church v. Hull Church*, 393 U.S. at 449. Neither the State Constitution nor the First Amendment deprives church members of their right to resort to the courts for the protection of their property rights, *Atkins v. Walker*, 284 N.C. 306, 200 S.E.2d 641 (1973), or their civil rights, *Abyssinia Missionary Baptist Ch. v. Nixon*, 340 So. 2d 746 (Ala. 1976). *The question is simply whether the court can decide the case by reference to neutral principles of law, without reference to issues of faith and doctrine....*

*Hierarchical churches [like the Roman Catholic Church] may, and customarily do, establish their own rules for discipline and internal government. They may,. and frequently do, establish internal tribunals to decide internal disputes arising in matters of discipline and internal government. These tribunals may be guided by a body of internally-developed canon or ecclesiastical law, sometimes*

*developed over a period of centuries. The decisions of such tribunals may be promulgated as matters of faith and are entirely independent of civil authority. One who becomes a member of such a church, by subscribing to its discipline and beliefs, accepts its internal rules and the decisions of its tribunals.* For that reason, the civil courts will treat a decision by a governing body or internal tribunal of an hierarchical church as an ecclesiastical determination constitutionally immune from judicial review. To do otherwise would precipitate the civil court into the "religious thicket" of reviewing questions of faith and doctrine even when the issue is merely one of internal governance, because in such churches the resolution of internal government disputes depends upon matters of faith and doctrine. *Serbian Eastern Orthodox Diocese,* 426 U.S. at 724-25; *see also Green v. Lewis,* 221 Va. 547, 272 S.E.2d 181 (1980). [Emphasis added.]

As the editors of *The Constitution of the United States of America Analysis and Interpretation,* Library of Congress, U.S. Printing Office, 1987, pp. 967-968, state:

One value which both clauses of the religion section serve is to enforce governmental neutrality in deciding controversies arising out of religious disputes. It will often be the case that a schism will develop within churches or between a local church and the general church, which will result in secession or expulsion of one faction or of the local church. A dispute over which body is to have control of the property of the church will then often be taken into the courts. It is now established that both religion clauses prevent governmental inquiry into religious doctrine in settling such disputes and contrarily require courts to look simply to the decision-making body or process in the church to give effect to whatever decision is officially and properly made.

The Roman Catholic Church is the classic, hierarchical church. The Plaintiffs have admitted that the bishop and priest are duly appointed and have authority over the church property. The resolution of this case requires the court to examine and construe the Canons of the Catholic Church, copies of some of which were filed by the defendants, to determine whether the bishop and priest had the plenary authority to bar the plaintiffs from the church property under the circumstances of this case. No matter how artfully crafted the complaint may be in this case, it does not hide the fact that this is not a

dispute over church property, but rather this is a dispute between two parishioners and their priest. "This court ... is powerless to decide disputes involving church doctrine." *Diocese of Southwestern Va. v. Buhrman*, 5 Va. Cir. 497, 502 (Clifton Forge 1977), *relying upon Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L. Ed. 666, 676-677 (1871). If the plaintiffs wish to challenge the propriety of their priest's and bishop's actions, they must take their case before the proper ecclesiastical authorities in the Roman Catholic Church not a secular court.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Defendants' Demurrer and Plea of Jurisdiction are sustained, and the Bill of Complaint for Declaratory and Injunctive Relief is dismissed.