# CIRCUIT COURT OF FAIRFAX COUNTY

Judicial Commission
of PCA Korean Capital
Presbytery

v.

Kim et al.

Case No. (Chancery) 169175

Kim et al.

v.

Judicial Commission
of PCA Korean Capital
Presbytery et al.

Case No. (Chancery) 170246

February 14, 2001

BY JUDGE R. TERRENCE NEY

This matter involves a struggle for control over the Korean Presbyterian Church of Washington (hereinafter referred to as "Church"), located at 4925 Twinbrook Road, Burke, Virginia 22015. The Church is a member of the Presbyterian Church of America (hereinafter referred to as "PCA"), under the jurisdiction of the Korean Capital Presbytery PCA (hereinafter referred to as "Presbytery"), and managed by the General Assembly of the PCA.

The Book of Church Order of the Presbyterian Church of America establishes a multitiered tribunal system for settling ecclesiastic disputes. The Session is the first tier in the hierarchy and acts as the ruling body of the Church. The Session is made up of five elders elected by members of the Church. A Judicial Commission, if in place, ratifies decisions, actions and

elections of the Session. The Judicial Commission is a body, whose members are appointed by the Presbytery, that administers first and then oversees the decisions of a church whose congregation may be in a conflict. The Judicial Commission reports to the Presbytery. A dispute may be appealed to the Presbytery, which is a governing body that oversees member churches in a region and which also determines the correctness of any ruling made by a Judicial Commission. The highest ecclesiastical authority in this system is the General Assembly that determines the final outcome of contested disputes within a ministry or church.

Charles C. Kim, Moon K. Ham, and Young J. Choi are members of one (hereinafter "the Kim group") of the two factions that are competing for control of the Church. Mr. Kim and Mr. Ham were both ruling elders on the Session of the Church until their removal on December 3, 2000. Mr. Ham was also a Church Trustee until this Court at the December 29, 2000, hearing permitted the Church to elect a new panel of trustees. *See Kim, et al. v. Judicial Commission, et al.*, 2001 Va. Cir. LEXIS 65, Chancery No. 170246 (Fairfax Circuit Court 2001).

Simultaneously with the filing of numerous complaints and appeals to the Presbytery by the two factions of the Church, Charles C. Kim and Moon K. Ham petitioned this Court for the appointment of new Church trustees pursuant to § 57-8 of the Code of Virginia (1950). *See In re The Korean Presbyterian Church of Washington*, Chancery No. 168633 (Fairfax Circuit Court). The Court proceeded to grant the request on September 22, 2000, but soon thereafter vacated that decision and held that the matter was for the ecclesiastical courts of that presbytery to determine.

On October 11, 2000, the Presbytery appointed a Judicial Commission to take over the Church for ninety days, conduct or monitor worship services, restore order, and allow the members of the Church to determine its leadership by the election of trustees. The Judicial Commission consisted of seven people appointed by the Presbytery: Rev. James Jin Ro, Rev. Dong Joo Seo, Rev. Kegor Kyungwoo Chun, Rev. Song Kyun Chang, Rev. Kwan-Hyun Rhee, and Elder Joon Kil Hahm.

An altercation occurred on October 15, 2000, when the doors of the Church were blocked to the members of the Judicial Commission. Fairfax County Police were called to maintain peace and order.

That following Friday, October 20, 2000, the Judicial Commission filed a Bill of Complaint in this court requesting an injunction. *The Judicial Commission of PCA Korean Capital Presbytery v. Kim et al.*, 2001 Va. Cir. LEXIS 65, Chancery No. 169175 (Fairfax Circuit Court). The Court, in an *ex parte* hearing, ordered Charles Kim and other Church members to permit

access to the Church to members of the Judicial Commission and further to relinquish all keys, books, and records to the Judicial Commission. *See The Judicial Commission of PCA Korean Capital Presbytery v. Kim et al.*, 2001 Va. Cir. LEXIS 65, Chancery No. 169175 (Fairfax Circuit Court). On November 2, 2000, the Court denied a Motion to Dissolve the Temporary Injunction, but granted a request to raise the bond amount from $100.00 to $5,000.00. *See id.*

On December 29, 2000, the parties appeared on the Petition of Charles C. Kim, Moon K. Ham and Young J. Choi. *See Kim et al. v. Judicial Commission et al.*, 2001 Va. Cir. LEXIS 65, Chancery No. 170246 (Fairfax Circuit Court 2001). The plaintiffs requested a Temporary and Permanent Injunction to maintain in place the current trustees, prohibit the sale of real estate owned by the Korean Presbyterian Church of Washington, and prevent the election of new trustees. The Petition was granted in part and denied in part. The Court permitted the election of new trustees, but enjoined any trustees from selling Church property until further order of the Court.

On December 31, 2000, the members of the Church elected a new panel of trustees, none of whom were members of the Kim group. On January 8, 2001, the Presbytery affirmed these elections and procedures. The Presbytery also imposed sanctions on two former elders, one of whom was also a trustee, based on a report submitted by the Judicial Commission. Specifically, Charles C. Kim and Moon K. Ham were suspended from receiving sacraments and participating in Church governance for a period of three years. A Modified Decree was later entered on January 17, 2001, permitting the Kim group to worship separately on the Church Property. *See Kim et al. v. Judicial Commission et al.*, 2001 Va. Cir. LEXIS 65, *6, Chancery No. 170246 (Fairfax Circuit Court 2001) (enjoining the Church "from selling the real property" and permitting the plaintiffs and the defendants to use separate buildings on Church property "until the underlying ecclesiastic dispute is resolved").

A Joint Motion for Reconsideration has been filed on behalf of the Presbytery and the Judicial Commission to dissolve the injunction which permits the separate worship services and which also prohibits the trustees from selling or encumbering property of the Church. This motion was fully briefed and then argued to the Court on February 1, 2001, and is ripe for decision.

The Court addresses two issues in the case. First, whether any of the Court's prior injunctions or orders should remain in effect insofar as the new ruling body is required to permit the Kim group, some of whose members have also been formally defrocked, to hold services on the Church property.

Second, whether any of the Church property may be transferred or encumbered pending the Kim group's appeal to the General Assembly.

## Analysis

The principles governing disputes within a church are well settled. One need look no further than the First Amendment to find that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." Constitution of the United States, Amendment I (1791). This unambiguous proscription is applicable to the states through the application of the Fourteenth Amendment to the Constitution. *See Presbyterian Church v. Hull Church*, 393 U.S. 440, 21 L. Ed. 2d 658, 89 S. Ct. 601 (1969). No state is more firmly wedded to this principle than Virginia, where it was born. *See Everson v. Board of Education*, 330 U.S. 1, 91 L. Ed. 711, 67 S. Ct. 504 (1946); *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107 (1985).

> The constitutional guarantees of religious freedom have no deeper roots that in Virginia, where they originated, and nowhere have they been more scrupulously observed. These principles prohibit the civil courts from resolving ecclesiastical disputes which depend upon inquiry into questions of faith or doctrine.

*Reid v. Gholson*, 229 Va. 179, 187, 327 S.E.2d 107 (1985).

Notwithstanding, as is the case here, courts are frequently called upon to resolve disputes within a church or between its members. Courts must be extremely reluctant to do so, else they find themselves "entangled in essentially religious controversies." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976). Religious disputes must be resolved within and by the religious bodies based upon the beliefs of the church or sect.

> The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an

implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

*Watson v. Jones*, 80 U.S. 679, 13 Wall. 679, 728-29, 20 L. Ed. 666 (1872).

There is no dispute here that the Church is a hierarchical as opposed to congregational church. For an excellent exposition of the difference between the two types of church organization, see *Reid v. Gholson*, 229 Va. 179, 327 S.E.2d 107 (1985). The Book of Church Order prescribes rules for internal governance, discipline, and appeals. No party has suggested that any of the disputes raised in this matter could not be resolved by reference to the Book of Church Order. To the contrary, at one time or the other *all* parties have argued that the Court should refrain from acting in these related cases because of the fact that the Book of Church Order completely sets out the procedures and remedies for the resolution of the grievances presented here. The Court's initial action in granting the injunction in order to permit the Judicial Commission to enter the Church and take over its functions for an interim ninety day period was strenuously opposed by the Kim group on the basis that the Court was injecting itself into an entirely ecclesiastical matter. This Court disagreed, reasoning that intervention was necessary in order to preserve peace and order and also so that the ecclesiastical functions with regard to addressing the dispute within the Church could proceed. It is well settled in Virginia that:

Neither the State Constitution nor the First Amendment deprives church members of their right to resort to the courts for the protection of their property rights, or their civil rights. The question is simply whether the court can decide the case by reference to neutral principles of law, without reference to issues of faith and doctrine.

*Reid v. Gholson*, 229 Va. at 188 (1985) (citations omitted).

Protecting the civil rights of the members of the Church, by avoiding a forcible lockout of the members of the Judicial Commission, did not involve reference to issues of faith and doctrine. It was never seriously contested by

the Kim group that the Judicial Commission was not properly constituted by a selection of members who had no connection with the disputed Church. No issues of faith were presented whatsoever. No evidence was offered or even proffered to the effect that the Judicial Commission's appointment, constitution, or actions were a contravention of "faith and doctrine" and, as such, required the Court to enter the murky waters of religious divination, in order to address or resolve the issue. *Cf. The Norfolk Presbytery v. Bollinger*, 214 Va. 500, 201 S.E.2d 752 (1974).

Turning then to the first question presented, it is the opinion of the Court that to permit the Kim group to meet on the property of the Church and conduct its own services, regardless of the fact that such services may be led by either lay ministers or by sanctioned ministers from other churches, contravenes directly the vote of the Session that removed Mr. Kim and Mr. Ham and the approval of that vote by the Commission and by the Presbytery. Further, the Presbytery has also accepted the Judicial Commission's decision that suspended Mr. Kim and Mr. Ham from the Sacraments for three years. Whether a "suspension from the Sacraments" is a defrocking, as continually alluded to by counsel for the Commission and the Church, or an excommunication is not clear. No evidence was presented either way. What is clear is that Messrs. Kim and Ham, who were also removed as elders of the church, were removed from any leadership position within both the church and the Presbytery. The evidence suggests that the removal of Messrs. Kim and Ham from the position of elders by the Session amounted to a defrocking, and the suspension from the sacraments by the Judicial Commission amounted to an excommunication. The difference is not important. That they are removed is what matters. That fact was not disputed, and, in any case, required no consideration by the Court of issues of faith or doctrine. The plain fact is that the Kim group has, for the moment, lost the power struggle within the Church, and this loss has been affirmed by both the Judicial Commission and the Presbytery. As a result, the leadership elected by the session should be permitted to lead the Church in all respects. If that includes not permitting the Kim group to have separate meetings, then so be it. That is a decision within the Church. If the Kim group is unhappy with it, then it must follow the remedies provided to it under the Book of Church Order. This is not a matter that permits intervention by this Court.

Both sides rely on Section 42-6 of the Book of Church Order that states:

Notice of appeal shall have the effect of suspending the judgment of the lower court until the case has been finally decided in the higher court. However, the court of original jurisdiction may, for sufficient

reasons duly recorded, prevent the appellant from approaching the Lord's Table, and if an officer, prevent him from exercising some or all his official functions; until the case is finally decided. (Cf. *BCO* 31-10; 33-3.) This shall never be done in the way of censure.

Plainly, both sides cannot be correct. But it is not the function of this Court to resolve this seeming ambiguity. For the Court to do so — or, perhaps, rather, to attempt to do — would plunge it clearly into the "religious thicket" proscribed by settled precedent. *See, e.g., E.E.O.C. v. Catholic Univ.*, 856 F. Supp. 1 (1994); *aff'd E.E.O.C. v. Catholic Univ.*, 317 U.S. App. D.C. 343, 83 F.3d 455 (D.C. Cir. 1996).

As to the second question, the freezing of assets, in effect, by prohibiting the sale or encumbering of Church property, the same result obtains. It makes little sense for the Session, the Judicial Commission, and the Presbytery to have made various decisions allegedly pursuant to the procedures called for by the Book of Church Order in order to lead this Church and then be unable to do so because an inability to govern its financial affairs. The Kim group argues that if it is successful in its appeal to the General Assembly of the Presbyterian Church, then it should not have to be faced with the prospect of no Church left to lead. The argument is well taken. Yet to consider it on its merits, the Court must at the very least examine the Book of Church Order and then overrule the Session, Judicial Commission, and Presbytery, none of which has chosen to restrict the new leadership's governance of the Church. At the most, the Court would have to look into the question that the Kim group had a substantial likelihood of prevailing on the merits of its appeal in order to justify the injunction. That issue would involve without question matters of faith and doctrine. That is not an area into which this Court should or will intrude.

In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudication disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Serbian Eastern Orthodox Diocese etc. v. Milivojevich*, 426 U.S. 696, 724-25, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976).

Nothing in this case suggests that there is any proper course for this Court to follow other than to accept the decisions of the Session, Judicial Commission, and Presbytery. To contravene or overturn them requires an examination and decision as to matters of faith and doctrine of the Presbyterian Church of America and the Korean Capital Presbytery. *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976); *E.E.O.C. v. Catholic Univ.*, 856 F. Supp. 1 (1994); *aff'd E.E.O.C. v. Catholic Univ.*, 317 U.S. App. D.C. 343, 83 F.3d 455 (D.C. Cir. 1996). This would be not only unwise but constitutionally impermissible as well.

The Joint Motion for Reconsideration is granted. The prior orders of injunction are dissolved. The sale of Church property may be so permitted provided that the governing body has the appropriate authority under Virginia Code §§ 57-8 and 57-15.